

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION SYSTEMS, LLC
240 New York Drive
Fort Washington, PA 19034

    and

COTTMAN TRANSMISSION
COMMUNICATIONS CORP.
240 New York Drive
Fort Washington, PA 19034

                 Plaintiffs,

    v.

DAVID FAULKNER,
7216 Pawnee Trail
Fort Worth, TX 76135

ROBYN FAULKNER,
7216 Pawnee Trail
Fort Worth, TX 76135

TOOGS & DEENIE, INC.
3611 East Highway 377
Granbury, TX 76049

    and

SOUTHWESTERN BELL TELEPHONE CO.
208 South Akard Street
One SBC Plaza, Suite 2950
Dallas, TX 75202

              Defendants.

CIVIL ACTION

NO. *02-cv-4376*

## NOTICE OF REMOVAL

    Defendant Southwestern Bell Telephone Company ("SWBT"), by and through its

undersigned counsel and pursuant to 28 U.S.C. §§ 1441 and 1446, hereby gives notice of the

removal of the above-captioned matter from the Court of Common Pleas of Montgomery County,

Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. In

support thereof, SWBT avers as follows:

A TRUE COPY CERTIFIED FROM THE RECORD

DATED: 7-2-02

ATTEST: Dannis Taylor

DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COTTMAN TRANSMISSION SYSTEMS, LLC  :
240 New York Drive                 :
Fort Washington, PA  19034         :
                                   :
        and                        :
                                   :
COTTMAN TRANSMISSION               :
COMMUNICATIONS CORP.               :
240 New York Drive                 :
Fort Washington, PA  19034         :
                                   :
                  Plaintiffs,      :    CIVIL ACTION
                                   :
        v.                         :    NO.
                                   :
DAVID FAULKNER,                    :
7216 Pawnee Trail                  :
Fort Worth, TX  76135              :
                                   :
ROBYN FAULKNER                     :
7216 Pawnee Trail                  :
Fort Worth, TX  76135              :
                                   :
TOOGS & DEENIE, INC.               :
3611 East Highway 377              :
Granbury, TX  76049                :
                                   :
        and                        :
                                   :
SOUTHWESTERN BELL TELEPHONE CO.    :
208 South Akard Street             :
One SBC Plaza, Suite 2950          :
Dallas, TX  75202                  :
                                   :
                  Defendants.      :

## NOTICE OF REMOVAL

Defendant Southwestern Bell Telephone Company ("SWBT"), by and through its

undersigned counsel and pursuant to 28 U.S.C. §§ 1441 and 1446, hereby gives notice of the

removal of the above-captioned matter from the Court of Common Pleas of Montgomery County,

Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.  In

support thereof, SWBT avers as follows:

1.     On or about June 12, 2002, plaintiffs Cottman Transmission Systems, LLC and Cottman Transmissions Communications Corp. (collectively, "Cottman") commenced this action by filing a Complaint and a Petition for a Temporary Restraining Order and/or Preliminary Injunction in the Court of Common Pleas of Montgomery County, Pennsylvania.  In accordance with 28 U.S.C. § 1446(a), attached hereto as Exhibit A is a true and correct copy of the Complaint and all other process, pleadings and orders that Cottman purportedly served on SWBT as of the date of this Notice.

2.     Cottman's Complaint states a trademark infringement claim for damages and injunctive relief under the Lanham Trademark Act, 15 U.S.C. § 1051 et seq.  Id., Count VIII.

3.     This action is therefore removable pursuant to 28 U.S.C. 1441(a) because it is one over which this Court has original jurisdiction under 28 U.S.C. § 1331 (federal question cases) and 28 U.S.C. § 1338(a) (actions arising under any Act of Congress relating to trademarks).  Cottman's related state law claims for breach of contract and tortious interference with contractual relations are subject to supplemental jurisdiction under 28 U.S.C. § 1367.

4.     This action is also removable pursuant to 28 U.S.C. § 1441(a) because Cottman's Complaint states a basis for original jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity of citizenship).

5.     Plaintiff Cottman Transmission Systems, LLC is a Delaware limited liability company with its principal place of business located at 240 New York Drive, Fort Washington, Pennsylvania 19034.  Exhibit A, Complaint, ¶ 1.  Plaintiff Cottman Transmission Communications Corp. is a Pennsylvania corporation with its principal place of business also located at 240 New York Drive, Fort Washington, Pennsylvania 19034.  Id., ¶ 2.

6.      All of the defendants are citizens of Texas. Mr. And Mrs. Faulkner are alleged to reside at 7216 Pawnee Trail, Fort Worth, Texas 76135 and to maintain a business address at 3611 East Highway 377, Granbury, Texas 76049. Id., ¶ 3. Defendant Toogs & Deenie, Inc. is alleged to be a Texas corporation with its principal place of business located at 3611 East Highway 377, Granbury, Texas 76049. Id., ¶ 4. Defendant SWBT is a Texas limited liability partnership with its principal place of business located at 175 East Houston Street, San Antonio, Texas 78215.

7.      Cottman's Complaint seeks compensatory damages totaling in excess of $114,255.67 for defendants' alleged breach of a license agreement and tortious interference with Cottman's contractual relations. Id., Counts I-IV, VI-VII and page 17.

8.      The Complaint also seeks a declaration that, inter alia, Cottman may (1) terminate its business relationship with defendants David and Robyn Faulkner and Toogs & Deenie, Inc and (2) take physical control of a transmission center currently owned and operated by these three defendants. Id., Count V.

9.      Cottman further seeks to enjoin defendants David and Robyn Faulkner and Toogs & Deenie, Inc from using Cottman's trademarks and from thereby operating a Cottman franchise. Id., Count VIII.

10.     Cottman also seeks an injunction requiring defendant SWBT to change a transmission center's telephone account to Cottman's name, an action that would preclude defendants David and Robyn Faulkner and Toogs & Deenie, Inc. from directing and controlling the telephone account for the transmission center. Id., Count IX.

11.    Taking into account Cottman's claims for damages and the monetary value of its multiple claims for declaratory and injunctive relief, the Complaint alleges an amount in controversy in excess of $75,000, in the aggregate and as to each of the defendants.

12.    As there is complete diversity of citizenship between the plaintiffs and the defendants and the amount in controversy exceeds the sum of $75,000, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

13.    SWBT was first served with a copy of Cottman's Complaint on or after June 25, 2002. The within Notice of Removal has therefore been filed in a timely manner under 28 U.S.C. § 1446(b).

14.    All of the remaining defendants in the action have expressly consented to join SWBT in the removal of this action to this Honorable Court. See Consents to Removal, attached hereto as Exhibit B.

15.    In accordance with 28 U.S.C. § 1446(d), SWBT shall promptly file a certified copy of this Notice of Removal in the Court of Common Pleas of Montgomery County, and SWBT shall promptly give written notice of the removal of this action to counsel for Cottman.

16.    By removing the action to this Court, SWBT does not waive any defenses, objections or motions available to it under the applicable law. In particular, SWBT expressly reserves the right to move for dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure.

WHEREFORE, pursuant to 28 U.S.C. 1441 and 1446, SWBT respectfully
removes the above-captioned civil action now pending in the Court of Commons Pleas of
Montgomery County, Pennsylvania.

Respectfully submitted,

Dated:  July 2, 2002.

Seamus C. Duffy
Attorney Identification No. 52501
David J. Antczak
Attorney Identification No. 80747
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, Pennsylvania  19103-6996

Attorneys for Defendant
Southwestern Bell Telephone Company

## CERTIFICATE OF SERVICE

I, David J. Antczak, hereby certify that, on the date set forth below, I caused a true

and correct copy of the foregoing NOTICE OF REMOVAL to be served via Federal Express

overnight delivery, upon the following counsel of record and defendants:

William B. Jameson, Esquire
Alan L. Poliner, Esquire
COTTMAN TRANSMISSION SYSTEMS, LLC
240 New York Drive
Fort Washington, Pennsylvania  19034

Attorneys for Plaintiffs

David and Robyn Faulkner
7216 Pawnee Trail
Fort Worth, Texas  76135

Toogs & Deenie, Inc.
3611 East Highway 377
Granbury, Texas  76049

Dated:  July 2, 2002.

_David J. Antczak_
David J. Antczak

**COTTMAN TRANSMISSION SYSTEMS, LLC** ATTORNEYS FOR PLAINTIFFS
**COTTMAN TRANSMISSION COMMUNICATIONS CORP.**
**WILLIAM B. JAMESON, ESQUIRE**
**ALAN L. POLINER, ESQUIRE**
**Attorney I.D. #58949/#82108**
**240 New York Drive**
**Fort Washington, PA 19034**
**(215) 643-5885**

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

COTTMAN TRANSMISSION SYSTEMS, LLC :
240 New York Drive :
Fort Washington, PA 19034 :
and :
COTTMAN TRANSMISSION :
 COMMUNICATIONS CORP. :
240 New York Drive :
Fort Washington, PA 19034 :
:
Plaintiffs, :
v. :
: No. 02-10798
DAVID FAULKNER :
7216 Pawnee Trail :
Fort Worth, TX 76135 :
and :
ROBYN FAULKNER :
7216 Pawnee Trail :
Fort Worth, TX 76135 :
and :
TOOGS & DEENIE, INC. :
3611 E. Highway 377 :
Granbury, TX 76049 :
and :
SOUTH WESTERN BELL TELEPHONE CO. :
208 S. Akard Street :
1 SBC Plaza, Suite 2950 :
Dallas, TX 75202 :
:
Defendants. :

### N O T I C E

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Reference Service
100 West Airy Street
Norristown, Pennsylvania 19401
Telephone (610) 279-9660

I:\ADV\USERS\USERS\USERS\WILL\LITIGA\FAULKNER\NOTICE.DOC

COTTMAN TRANSMISSION SYSTEMS, LLC
COTTMAN TRANSMISSION COMMUNICATIONS CORP.
WILLIAM B. JAMESON, ESQUIRE                    **Attorneys for Plaintiff**
ALAN POLINER, ESQUIRE
Attorney I.D. No.s 58949/81876
240 New York Drive
Fort Washington, PA 19034
(215) 643-5885

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

| | |
|---|---|
| COTTMAN TRANSMISSSION SYSTEMS, LLC : | |
| 240 New York Drive : | |
| Fort Washington, PA 19034 : | |
| and : | |
| COTTMAN TRANSMISSION : | |
|   COMMUNICATIONS CORP. : | |
| 240 New York Drive : | |
| Fort Washington, PA 19034 : | |
| Plaintiffs, : | |
| v. : | No. 02-10798 |
| DAVID FAULKNER : | |
| 7216 Pawnee Trail : | |
| Fort Worth, TX  76135 : | |
| and : | |
| ROBYN FAULKNER : | |
| 7216 Pawnee Trail : | |
| Fort Worth, TX  76135 : | |
| and : | |
| TOOGS & DEENIE, INC. : | |
| 3611 E. Highway 377 : | |
| Granbury, TX  76049 : | |
| and : | |
| SOUTH WESTERN BELL TELEPHONE CO. : | |
| 208 S. Akard Street : | |
| 1 SBC Plaza, Suite 2950 : | |
| Dallas, TX  75202 : | |
| Defendants. : | |

OFFICE OF THE MONTGOMERY COUNTY, PA 02 JUN 12 AM 9: 19

## COMPLAINT

Plaintiffs, Cottman Transmission Systems, LLC ("Cottman") and Cottman Transmission

1

Communications Corp.("Cottman Communications"), by and through their undersigned counsel, hereby complain against Defendants, David Faulkner ("Mr. Faulkner"), Robyn Faulkner ("Mrs. Faulkner"), Toogs & Deenie, Inc. (T&D) and South Western Bell Telephone Company ("SWB"), as follows:

## The Parties

1.      Plaintiff, Cottman, is a Delaware limited liability company duly registered to do business in the Commonwealth of Pennsylvania, with its principal place of business located at 240 New York Drive, Fort Washington, Pennsylvania, 19034.

2.      Plaintiff, Cottman Communications, is an affiliated company of Cottman, and is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is duly registered to do business in the Commonwealth of Pennsylvania, with its principal place of business located at 240 New York Drive, Fort Washington, Pennsylvania, 19034.

3.      Defendants Mr. and Mrs. Faulkner are husband and wife residing at 7216 Pawnee Trail, Fort Worth, TX  76135 and maintain a business address at 3611 E. Highway 377, Granbury, TX  76049.

4.      Defendant T&D is a Texas corporation with its principal place of business located at 3611 E. Highway 377, Granbury, TX  76049.

5.      Defendant SWB, upon information and belief, is a corporation organized and existing under the laws of Texas with a principal place of business located at 208 S. Akard Street, 1 SBC Plaza, Suite 2950, Dallas, TX  75202.

## The Contract Relationship

6.      On or about July 14, 1999, Defendants Mr. and Mrs. Faulkner and Plaintiff

Cottman entered into a License Agreement enabling the Faulkner Defendants to own and operate a Cottman Transmission Center located at 3611 E. Highway 377, Granbury, TX 76049 ("Center"). A true and correct copy of said License Agreement is attached hereto and made a part hereof as Exhibit "A".

7.      Concomitant with executing the License Agreement, the Faulkner Defendants, individually and on behalf of Defendant T&D, entered into an agreement with Plaintiff whereby the License Agreement was assigned to Defendant T&D, who agreed to assume and become liable for the obligations of the Faulkner Defendants. A true and correct copy of the said Transfer of License is attached to the License Agreement at Exhibit "A".

8.      The Transfer of License additionally provides that notwithstanding the transfer to Defendant T&D, the Faulkner Defendants shall remain personally liable to Plaintiff Cottman under the terms of the License Agreement.

### The Faulkners and T&D Materially Breach the License Agreement

9.      Since becoming licensees of Plaintiff Cottman, the Faulkners and T&D have breached their License Agreement with Cottman by refusing to report sales and pay fees due and owing to Cottman.

10.      Notwithstanding the repeated requests of Cottman, the Faulkners and T&D have refused and continue to refuse to report Center sales or pay the continuing fees owed to Cottman arising from the operation of the Center.

11.      The Faulkners and T&D have also refused and continue to refuse to respond to Cottman's attempts to communicate with them or confirm compliance with Cottman operational requirements.

12.    The Faulkners and T&D are rogue operators using Cottman's trademarks and good will while, at the same time, refusing to abide by the License Agreement or work within the Cottman System.

13.    In a letter dated May 3, 2002, Cottman provided formal notice to the Faulkners and T&D that they were in breach of the License Agreement and that Cottman intended to terminate their License Agreement if the breaches were not cured within ten (10) days. A true and correct copy of the said letter is attached hereto and made a part hereof at Exhibit "B".

14.    In response, the Faulkners and T&D have refused to comply and cure their breaches of the License Agreement.

### Defendants Wrongfully Deprive Plaintiffs from
### Control of Cottman's Advertised Telephone Listings

15.    The Faulkners and T&D, together with Defendant SWB, have deprived Plaintiffs from control over their Cottman advertised telephone lines running to the Center.

16.    Cottman is the exclusive owner of the Cottman trademarks and utilizes its affiliated company, Cottman Communications, to set up and maintain telephone lines and Yellow Page listings, which advertise the Cottman trademarks for its Cottman Transmission Centers. See Paragraph 11 of License Agreement attached hereto at Exhibit "A".

17.    In order to police and control the Cottman trademarks and good will, Cottman required, as a condition of issuing a License Agreement, that the Faulkners and T&D recognize and agree that Plaintiffs are the exclusive owner of the telephone account for the Cottman telephone lines running to the Center and advertised in Yellow Pages directory listings.

18.    Specifically, Paragraph 14 of the License Agreement provides that "COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone

numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer." See Paragraph 14 of License Agreement attached hereto at Exhibit "A".

19.     Before the Center even opened, on or about September 14, 2000, Plaintiff Cottman Communications, at the request of Cottman, set up the main telephone number with Defendant SWB for the Center, and placed advertisements using the said telephone number in local Yellow Pages directories prominently displaying Cottman trademarks.

20.     Thereafter, on or about July 24, 2001, when the Center was about to open, Plaintiff Cottman Communications, at the request of Cottman, set up the roll over telephone numbers with Defendant SWB for the Center.

21.     The telephone numbers for the Center, which were set up by Cottman Communications with SWB, were and remain to be 817-579-8664, 817-573-0275, 817-573-0413 and 817-579-7033.

22.     The telephone account was set up in the name of Cottman Communications, who has maintained Yellow Pages advertising for the Center using the telephone numbers it set up ever since.

23.     As part of the transaction, Defendant SWB required that all telephone lines and Yellow Page charges for the Center be in Cottman Communications' name and that Cottman Communications be financially responsible for the said telephone lines to Defendant SWB.

24.    As a further part of the transaction, Cottman Communications and SWB agreed that a password would be maintained for the account, and SWB agreed to refuse access to the account to anyone other than certain key personnel of Plaintiffs who provide the password when prompted by SWB's telephone representative.

25.    On or about October 10, 2001, Cottman Communications, at the request of Cottman, switched service for the telephone numbers away from SWB to a third party telephone company with whom Cottman had negotiated better rates and services.

26.    On or about April 19, 2002, after the Faulkners and T&D had breached the License Agreement with Cottman as heretofore described, Cottman Communications contacted its new telephone service provider to have the Center telephone lines redirected to another Cottman location only to find that the Defendants had previously, without Plaintiffs' authorization, switched service for the Cottman telephone lines back to SWB.

27.    Specifically, on or about November 15, 2001, Defendants secretly slammed the telephone account away from Plaintiffs' third party telephone service provider and back to Defendant SWB who then wrongfully changed the account into the name of the Faulkners.

28.    Further, the Faulkners had instructed SWB to block any efforts of Plaintiffs to assert any control over the Cottman telephone numbers.

29.    Accordingly, when Cottman Communications contacted SWB on or about April 19, 2002 to have the telephone account put back into the name and control of Cottman Communications, Defendant SWB refused after consulting with the Faulkners.

30.    Thereafter, Plaintiffs continued to assert their claim to the Cottman telephone account and provided Defendant SWB with supporting documentation.

31.    In a letter dated May 28, 2002, from Plaintiffs' legal department to the legal department of Defendant SWB, Plaintiffs demanded that the account be placed back into Cottman Communications name. A true and correct copy of the said letter is attached hereto and made a part hereof at Exhibit "C".

32.    Notwithstanding the repeated demands of Plaintiffs, Defendants continue to refuse to switch the telephone account back into Cottman Communications' name and control.

33.    Meanwhile, Defendants Mr. and Mrs. Faulkner and T&D continue to openly refuse to report Center sales, pay continuing license fees, pay continuing advertising fees or otherwise communicate with Plaintiffs about the operation of the Cottman Center.

34.    As a direct result of Defendants' continuing wrongful conduct, Cottman cannot police or control the services being provided to the public from the Center that continues to do business as Cottman Transmission.

35.    Texas is a major market for Cottman. Specifically, Cottman has approximately forty (40) franchise locations in Texas.

36.    Other franchisees in the Texas market are very much aware of: (1) the aforementioned continuing wrongful conduct of the Faulkners and T&D; and (2) Plaintiffs inability to date to bring these rogue operators into compliance.

37.    Without judicial intervention, Plaintiffs will incur immediate and irreparable harm to its franchise system and the good will behind its trademarks.

## COUNT I
### Breach of License Agreement - Failure to Submit Reports
### Cottman v. Mr. and Mrs. Faulkner and T&D

38.    Plaintiffs incorporate paragraphs 1 through 37 above as though set forth at length

herein.

39.     Pursuant to Paragraphs 8 and 9 of the License Agreement, Defendants Mr. and Mrs. Faulkner and T&D agreed to submit to Cottman reports and financial statements each week disclosing the Center's gross weekly sales.

40.     Defendants Mr. and Mrs. Faulkner and T&D have, as of week ending May 25, 2002, failed to comply with Paragraphs 8 and 9 of the License Agreement, neglecting and refusing to remit weekly business statements for the weeks ending April 27, 2002 through May 25, 2002.

41.     By the terms of the License Agreement, there are due and owing to Cottman continuing license and advertising fees for the aforementioned, unreported weeks.

42.     All of the books, papers and accounts are in the sole custody and control of Defendans and Cottman has no way of ascertaining the amount actually owed under the License Agreement but approximates the amount as of the date of the Complaint to be One thousand eight hundred dollars ($1,800.00) in continuing license fees based on verbal weekly sales figures provided by Defendants Mr. and Mrs. Faulkner and T&D.  Additionally, the sum of Three thousand two hundred thirty seven dollars and fifty cents ($3,237.50) in unpaid, continuing advertising fees, is due and owing to Plaintiff from Defendants Mr. and Mrs. Faulkner and T&D for the unreported weeks.

43.     As Defendants Mr. and Mrs. Faulkner and T&D have refused to submit weekly business reports, Cottman will incur auditing fees to verify the amount of license and advertising fees owing to Cottman from other records and sources.

44.     The License Agreement provides in Paragraph 22 that in the event collection proceedings are required in connection with the License Agreement, Defendants are liable to

Cottman for all expenses incurred in connection therewith, including legal and auditing expenses.

WHEREFORE, Plaintiff Cottman Transmission Systems, LLC demands judgment in its favor and against Defendants Mr. and Mrs. Faulkner and T&D, jointly and severally, in the amount of Five thousand thirty seven dollars and fifty cents ($5,037.50) together with costs, interest and attorneys fees.

## COUNT II
### Breach of License Agreement - Failure to Pay License Fees
### Cottman v. Mr. and Mrs. Faulkner and T&D

45.     Plaintiffs incorporate paragraphs 1 through 44 above as though set forth at length herein.

46.     Pursuant to Paragraph 8 of the License Agreement, Defendants agreed to pay Plaintiff Cottman weekly, as a continuing license fee, an amount equal to 7½% of the weekly gross business of the Center.

47.     Despite the repeated demands of Plaintiff Cottman, Defendants, as of week ending May 25, 2002, failed and refused and continue to fail and refuse to pay the sum of One thousand seventy eight dollars and thirty ($1,078.30) in continuing license fees, which sum remains due and owing to Plaintiff Cottman.

48.     The License Agreement further provides at Paragraph 22 that in the event that collection proceedings are required in connection with the License Agreement, Defendants are liable to Plaintiff Cottman for all expenses incurred in connection therewith, including legal expenses.

WHEREFORE, Plaintiff Cottman Transmission Systems, LLC demands judgment in its favor and against Defendants Mr. and Mrs. Faulkner and T&D, jointly and severally, in the

amount of One thousand seventy eight dollars and thirty ($1,078.30) together with costs, interest, and attorneys fees.

## COUNT III
### Breach of License Agreement – Failure to Pay Advertising Fees
### Cottman v. Mr. and Mrs. Faulkner and T&D

49.    Plaintiff incorporates paragraphs 1 through 48 above as though set forth at length herein.

50.    Pursuant to Paragraph 9 of the License Agreement, Defendants agreed to pay Plaintiff Cottman a weekly continuing advertising fee.

51.    Despite the repeated demands of Plaintiff Cottman, Defendants, as of week ending May 25, 2002, have failed and refused and continue to fail and refuse to pay the sum of Seven thousand eight hundred two dollars and sixty six cents ($7,802.66) in continuing advertising fees, which sum remains due and owing to Plaintiff.

52.    The License Agreement provides at Paragraph 22 that in the event collection proceedings are required in connection with the License Agreement, Defendants are liable to Plaintiff Cottman for all expenses incurred in connection therewith, including legal expenses.

WHEREFORE, Plaintiff Cottman Transmission Systems, LLC demands judgment in its favor and against Defendants Mr. and Mrs. Faulkner and T&D, jointly and severally, in the amount of Seven thousand eight hundred two dollars and sixty six cents ($7,802.66) together with costs, interest, and attorneys fees.

## COUNT IV
### Breach of License Agreement - Collection Expenses, Charges
### and Attorneys' Fees
### Cottman v. Mr. and Mrs. Faulkner and T&D

53.     Paragraphs 1 through 52 are incorporated by reference as though fully set forth at length herein.

54.     Pursuant to Paragraph 22 of the License Agreement, Defendants agreed to pay all costs incurred by Cottman in the collection of fees as described above, including collection and legal expenses.

55.     As of May 25, 2002, collection expenses and charges in connection with the Center amounted to Three hundred thirty seven dollars and twenty one cents ($337.21).

56.     Cottman has incurred and continues to incur attorneys fees in the pursuit of this action.

WHEREFORE, Plaintiff Cottman Transmission Systems, LLC demands judgment in its favor and against Defendants Mr. and Mrs. Faulkner and T&D, jointly and severally, in the amount of Three hundred thirty seven dollars and twenty one cents ($337.21) in collection expenses and charges plus reasonable attorneys fees.

## COUNT V
### Declaratory Judgment
### Cottman v. Mr. and Mrs. Faulkner and T&D

57.     Paragraphs 1 through 56 are incorporated by reference as though fully set forth at length herein.

58.     Pursuant to 42 Pa.C.S.A. § 7533, this Court has jurisdiction to determine disputes between Plaintiff and Defendants concerning the validity, formation and operation of the License Agreement.

59.     A dispute exists between Cottman and Defendants Mr. and Mrs. Faulkner and T&D as to whether Cottman properly entered into a License Agreement with Defendants,

whether Cottman fulfilled its obligations thereunder, and whether Defendants are in default of the License Agreement.

60.    Cottman did properly register, sell and enter into the License Agreement with Defendants and obeyed all applicable laws.  Neither Cottman nor its agents, employees, brokers or representatives made any misrepresentations or omissions of any material facts in connection with Defendants entering into the License Agreement.

61.    Cottman has performed all of its obligations under the License Agreement and has not negligently or willfully caused any damage to Defendants.

62.    Pursuant to Paragraph 18 of the License Agreement, Cottman may terminate the License Agreement for one or more of the breaches set forth above.

63.    Pursuant to Paragraph 19 of the License Agreement Plaintiff may secure physical possession of Defendants' Center location upon termination of the License Agreement.

WHEREFORE, Plaintiff Cottman Transmission Systems, Inc. demands a judgment in its favor and a declaration that the License Agreement is valid, was properly entered into, that Plaintiff has fulfilled all of its obligations under the License Agreement, that Plaintiff did not misrepresent and/or omit any material facts, that Plaintiff has not negligently or willfully caused damage to Defendants Mr. and Mrs. Faulkner and T&D, that Plaintiff may terminate Defendants under the License Agreement for one or more of the breaches described in the above set forth Counts of this Complaint, and that Plaintiff may obtain physical control of the Center location.

### COUNT VI
### Breach of License Agreement -- Unauthorized Use of Telephone Account
### Plaintiffs v. The Faulkners and T&D

64.    Paragraphs 1 through 63 are incorporated by reference as though fully set forth at length herein.

65.    Pursuant to Paragraph 14 of the License Agreement, Defendants Mr. and Mrs.

Faulkner and T&D agree that "COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate." See Paragraph 14 of License Agreement attached hereto at Exhibit "A".

66.    Notwithstanding their agreement that Plaintiffs have exclusive control over the telephone account, Defendants have knowingly taken wrongful action in material breach of the License Agreement to deprive Plaintiffs from their rightful control of the telephone account.

67.    Plaintiffs have been damaged and continue to incur damage as a result of Defendants' wrongful conduct.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Mr. and Mrs. Faulkner and T&D, jointly and severally, in a sum in excess of Fifty thousand dollars ($50,000.00) together with costs, interest and attorneys fees.

## COUNT VII
### Tortious Interference with Contractual Relations
### Plaintiffs v. SWB

68.    Paragraphs 1 through 67 are incorporated by reference as though fully set forth at length herein.

69.    Defendant SWBhas knowingly and wrongfully tendered to Defendants Mr. and Mrs. Faulkner and T&D exclusive authority over Plaintiffs' phone account notwithstanding SWB's knowledge that switching the telephone account for the Center is in direct violation of Plaintiffs' contractual rights against Defendants Mr. and Mrs. Faulkner and T&D in accordance with the License Agreement between Plaintiff and Defendants Mr. and Mrs. Faulkner and T&D.

70.    Defendant SWB's wrongful actions were done with the knowledge that Plaintiffs would be damaged in their business by switching exclusive authority over the phone account to Defendants Mr. and Mrs. Faulkner and T&D.

13

71.    Defendant SWB's wrongful actions were done with malice and/or reckless disregard for the contractual rights of Plaintiffs, and Plaintiffs have incurred and will continue to incur damages as a result.

72.    Defendant SWB is liable to Plaintiffs for compensatory and punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant SWB in a sum in excess of Fifty thousand dollars ($50,000.00) together with costs, interest and attorneys fees.

## COUNT VIII
## Trademark Infringement - Lanham Act Violations
## Cottman v. The Faulkners and T&D

73.    Cottman incorporates by reference the averments set forth in paragraphs 1 through 72 above as though set forth at length herein.

74.    Cottman is the owner of the Cottman trademarks. Cottman's right to the Cottman trademark was established by the first continuous use of the mark since at least as early as 1962 and by its formal registration of the mark with the United States patent and trademark office. The Plaintiff's marks are incontestable under 15 U.S.C. sec. 1065. The marks are used in interstate and foreign commerce.

75.    Cottman has developed substantial goodwill in connection with its use of the Cottman marks, such that the marks have acquired a secondary meaning indicating that the services associated with them are provided by Cottman, either directly or through licensees.

76.    By its methods of operating, its superior services, the excellence of its services, and by the substantial expenditure of resources that support its marks, Cottman has generated a valuable reputation for the aforesaid marks.

77.    Although Defendants Mr. and Mrs. Faulkner and T&D have openly abandoned all of their obligations under the License Agreement, they continue to operate the Center as a transmission repair business and hold themselves out to the public as "Cottman Transmission".

78.    The Defendants are using Cottman's marks and have exploited and continue to exploit the goodwill associated with the marks. The Defendants are continuing to use Cottman's marks or confusingly similar marks in an unlawful manner.

79.    The Defendats use of Cottman's marks, or confusingly similar marks, and other materials identified with Cottman's marks is likely to cause, and has caused, confusion to the public as to the origin of the Defendants' services and their association with Cottman's marks.

80.    The Defendants' conduct as aforesaid constitutes trademark infringement, unfair competition, palming off, and further subjects Cottman to irreparable harm by inter alia, depriving Cottman of the ability to enjoy the integrity of the goods and services associated with its marks.

81.    Mr. and Mrs. Faulkner and T&D have acted wrongfully, knowingly and purposefully in infringing upon Cottman's rights, with the intent to harm Cottman and deceive customers as to the origin of their services.

WHEREFORE, Cottman requests judgment in its favor and against Defendants Mr. and Mrs. Faulkner and T&D along with an order of injunction enjoining the said Defendants from further unauthorized use of the Cottman advertised telephone account they have wrongfully converted, as well as, Cottman's marks or other similar and confusing mark(s) and, further, demands damages from the said Defendants, jointly and severally, together with costs, interest and attorney fees.

## COUNT IX
## Injunctive Relief
## Plaintiffs v. Defendants

69.    Plaintiffs incorporate by reference the averments set forth in paragraphs 1 through 68 above as though set forth at length herein.

70.    Plaintiffs have suffered, and will continue to suffer, immediate and irreparable harm by being wrongfully deprived of the control of their telephone lines for the Centers, which telephone lines are linked to a Yellow Pages advertisement containing Cottman's trademarks. The damage being caused to Plaintiffs is not readily compensable in monetary damages.

71.    Greater injury will result from the denial of an injunction than from the grant of an injunction.

72.    The injunctive relief requested will restore or maintain the status quo between the parties as it existed immediately prior to the wrongful conduct.

73.    The activities sought to be restrained are actionable and the injunction requested is reasonably suited to abate such activities.

74.    Plaintiffs' right to recovery is clear and the alleged wrong is manifest.

WHEREFORE, Plaintiffs request this Court to issue an order of injunction in Plaintiffs' favor and against Defendants, enjoining Defendant SWB to change the telephone account for telephone numbers (817) 579-8664, (817) 573-0275, (817) 573-0413 and (817) 579-7033 back into the name of Cottman Communications. Request is further made for an order of injunction enjoining Defendants from interfering with Plaintiffs' right to direct and control the telephone account for the Center.

WHEREFORE, based on all Counts, Plaintiffs Cottman Transmission Systems, LLC and Cottman Transmission Communications Corp. demand:

1.      Judgment in favor of Cottman and against Defendants Mr. and Mrs. Faulkner and T&D on Counts I through IV in the amount of Fourteen thousand two hundred fifty five dollars and sixty seven cents ($14,255.67) plus costs, interest and attorney's fees;

2.      Judgment in favor of Cottman and against Defendants Mr. and Mrs. Faulkner and T&D on Count V along with a declaration that: (1) the License Agreement is a valid binding contract; (2) Cottman did not misrepresent or omit any material facts; (3) Cottman has fulfilled its obligations under the License Agreement; (4) Cottman has not negligently or willfully caused damage to Defendants Mr. and Mrs. Faulkner and T&D; (5) Cottman may terminate Defendants Mr. and Mrs. Faulkner and T&D's License for one or more of the breaches set forth in this Complaint; and (6) Cottman may obtain physical control of the Center;

3.      Judgment in favor of Plaintiffs and against Defendants Mr. and Mrs. Faulkner and T&D on Count VI in an amount in excess of Fifty thousand dollars ($50,000.00) plus costs, interest and attorney's fees;

4.      Judgment in favor of Plaintiffs and against Defendant SWB on Count VII in an amount in excess of Fifty thousand dollars ($50,000.00) plus costs, interest and attorney's fees;

5.      Judgment in favor of Plaintiff Cottman and against Defendants Mr. and Mrs. Faulkner and T&D on Count VIII along with an order of injunction enjoining the said Defendants from further unauthorized use of the Cottman advertised telephone account they have wrongfully converted, as well as, Cottman's marks or other similar and confusing mark(s) and, further, demands damages from the said Defendants, jointly and severally, together with costs, interest and

attorney fees

6.    Judgment in favor of Plaintiffs and against all Defendants on Count IX along with an order of injunction in Plaintiffs' favor and against Defendants, enjoining Defendant SWB to change the telephone account for telephone numbers (817) 579-8664, (817) 573-0275, (817) 573-0413 and (817) 579-7033 into the name of Cottman Communications. Additionally, an order of injunction enjoining Defendants from interfering with Plaintiffs' right to direct and control the telephone account for the Center; and

7.    Such other relief as the Court deems just and proper.

Respectfully Submitted,

6/11/02
DATE

William B. Jameson, Esquire
Alan Poliner, Esquire

Attorneys for Plaintiffs
Cottman Transmission Systems, Inc.
Cottman Transmission Communications Corp.
240 New York Drive
Fort Washington, PA 19034
(215) 643-5885

COTTMAN TRANSMISSION SYSTEMS, LLC
COTTMAN TRANSMISSION COMMUNICATIONS CORP.
WILLIAM B. JAMESON, ESQUIRE
ALAN L. POLINER, ESQUIRE
Attorney I.D. #58949/#82108
240 New York Drive
Fort Washington, PA 19034
(215) 643-5885

ATTORNEYS FOR PLAINTIFFS

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | |
|---|---|
| COTTMAN TRANSMISSION SYSTEMS, LLC : | |
| 240 New York Drive : | |
| Fort Washington, PA 19034 : | |
| and : | |
| COTTMAN TRANSMISSION : | |
| COMMUNICATIONS CORP. : | |
| 240 New York Drive : | |
| Fort Washington, PA 19034 : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| DAVID FAULKNER : | No. |
| 7216 Pawnee Trail : | |
| Fort Worth, TX 76135 : | |
| and : | |
| ROBYN FAULKNER : | |
| 7216 Pawnee Trail : | |
| Fort Worth, TX 76135 : | |
| and : | |
| TOOGS & DEENIE, INC. : | |
| 3611 E. Highway 377 : | |
| Granbury, TX 76049 : | |
| and : | |
| SOUTH WESTERN BELL TELEPHONE CO. : | |
| 208 S. Akard Street : | |
| 1 SBC Plaza, Suite 2950 : | |
| Dallas, TX 75202 : | |
| : | |
| Defendants. : | |

## VERIFICATION

I, Todd P. Leff, verify that I am the President of Cottman Transmission Systems, LLC and

Cottman Transmission Communications Corp., Plaintiffs in this action, and as such am authorized to make

this verification on Plaintiffs' behalf. I verify that the statements made in the foregoing Complaint are true

and correct to the best of my knowledge, information and belief. I understand that false statements herein

are made subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsification to

authorities.

Date: 6/11/02

_____
Todd P. Leff, President

**EXHIBIT A**



# LICENSE AGREEMENT

## TABLE OF CONTENTS

|  | Background | 1 |
|---|---|---|
| Section 1. | Grant of License | 1 |
| Section 2. | Term | 2 |
| Section 3. | Location and Lease | 2 |
| Section 4. | Training and Commencement of Business | 3 |
| Section 5. | Services Rendered by COTTMAN | 3 |
| Section 6. | Operator's Manual | 4 |
| Section 7. | Certain Obligations of OPERATOR | 5 |
| Section 8. | Continuing License Fees | 6 |
| Section 9. | Advertising | 6 |
| Section 10. | Insurance | 7 |
| Section 11. | COTTMAN Names and Marks and Trade Secrets | 7 |
| Section 12. | Protection of SYSTEM | 8 |
| Section 13. | Customer Warranties | 8 |
| Section 14. | Telephone Service | 8 |
| Section 15. | Signs | 8 |
| Section 16. | Restrictions on Change of Ownership | 8 |
| Section 17. | Relationship of the Parties; Indemnification | 10 |
| Section 18. | Termination | 10 |
| Section 19. | Effect of Termination | 11 |
| Section 20. | Covenant Not to Compete | 12 |
| Section 21. | Arbitration | 13 |
| Section 22. | Expenses | 14 |
| Section 23. | Waiver | 14 |
| Section 24. | Successors | 14 |
| Section 25. | Notice | 14 |
| Section 26. | Risk of Operations | 14 |
| Section 27. | Severability | 14 |
| Section 28. | Jurisdiction, Venue and Controlling Law | 15 |
| Section 29. | JURY WAIVER | 15 |
| Section 30. | Entire Agreement | 15 |



☒ **New**  ☐ **Conversion**
☐ **Elite**

# License Agreement

AGREEMENT made *July 14*, 19*99*, between COTTMAN TRANSMISSION SYSTEMS, INC., 240 New York Drive, Fort Washington, Pennsylvania 19034 (hereinafter called "COTTMAN"), and

David Faulkner and Robyn Faulkner
7216 Pawnee Trail
Ft. Worth, TX 76135

(hereinafter called "OPERATOR")

As a result of extensive experience in the automotive transmission business, COTTMAN has developed and perfected certain methods, procedures and techniques of repairing, remanufacturing and servicing transmissions; and

COTTMAN has developed a system (hereinafter called the "SYSTEM") for conducting operations in the automotive transmission business which consists, in part, of the use of the Cottman name, Cottman's methods, procedures and techniques, and a network of Centers devoted exclusively to the repair of automotive transmissions (hereinafter called "CENTERS") which use the Cottman name and said methods, procedures and techniques; and

COTTMAN has created a substantial demand for its products and services by maintaining high standards of quality in its operations and in the operations of its licensed CENTERS and by extensive advertising; and

COTTMAN is actively engaged in promoting and expanding the reputation and good will of the name COTTMAN in connection with the automotive transmission business; and

In recognition of the value of participating in the SYSTEM, OPERATOR desires to acquire a license to operate a CENTER;

THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound, the parties agree as follows:

1.  Grant of License.

a. In consideration of the payment of the initial fees, as set forth in Appendix A attached hereto and made a part hereof, OPERATOR shall have the right, subject to the terms and conditions set forth in this Agreement, to operate a CENTER (hereinafter called "the CENTER"), under the Cottman name and under any other trade names, trademarks, service marks and logos (hereinafter called "Cottman names and marks") presently used, or which may hereafter be used in the SYSTEM:

Ft. Worth, Texas

S.M.S.A./COUNTY

The Center may not be relocated without the express prior written approval of Cottman, which approval shall not be unreasonably withheld.

i. Cottman reserves the right to establish other Centers within the same Standard Metropolitan Statistical Area or County. The number of Centers, however, shall not exceed one Center for each 50,000 motor vehicle registrations in the above named area. In areas which are not designated within a statistical metropolitan area, Cottman shall not establish another Center within a three mile radius of the Operator's Center.

c. This paragraph c. shall apply only to New Licensees, Converting Individuals or Converting Groups. OPERATOR acknowledges that Cottman shall incur expenses upon execution of this Agreement, and in the event of any termination or cancellation of this Agreement for any reason whatsoever, COTTMAN in addition to any other rights or remedies it may have shall be entitled to retain the entire initial license fee deposit as liquidated damages.

c. This paragraph c. shall apply only to Elite License Agreements. In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, either COTTMAN or OPERATOR shall have the right to cancel and terminate this Agreement by giving thirty (30) days' written notice to the other. Upon any such cancellation or termination pursuant to this Section 1.c., OPERATOR shall be entitled to receive a refund of all deposit monies paid to COTTMAN, minus all expenses incurred by COTTMAN.

2. Term.

This Agreement shall be for an initial term of fifteen (15) years. Provided OPERATOR is not then in default under this Agreement, OPERATOR shall have the right to renew this Agreement at the end of the initial term or any renewal term for an additional fifteen (15) year term by executing, at least ninety (90) days, but not more than one (1) year, prior to the expiration of the then current term, COTTMAN's then current standard License Agreement. There shall be no additional initial license fee payable upon renewal. The rate of continuing license fee, as described in Section 8, to be paid by OPERATOR to COTTMAN during any renewal period shall not be more than the rate of continuing license fee payable under the then expiring agreement unless during the term of the then expiring agreement the laws and other rules and regulations under which COTTMAN operates have been modified to require COTTMAN to provide additional goods or services to OPERATOR or to otherwise increase COTTMAN's cost of operating or unless COTTMAN is, in fact, providing additional goods or services to OPERATOR. If, at least ninety (90) days prior to the expiration of the then current term of this Agreement, OPERATOR has not executed COTTMAN's then current standard License Agreement, this Agreement shall automatically terminate at the end of the term without further action by either party. Anything contained in this section 2 to the contrary notwithstanding the initial term of this Agreement and all renewal terms shall be subject to the other provisions of this Agreement relating to termination.

3. Location and Lease.

a. This paragraph a. shall apply only to New Licensees, Converting Individuals or Converting Groups. Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual. In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, COTTMAN, in its sole discretion, and absent any extension of time agreed to in writing by COTTMAN, may immediately and without prior notice, cancel and terminate this Agreement.

a. This paragraph a. shall apply only to Elite License Agreements. Upon the execution of this Agreement, COTTMAN and OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual. In the event such a location is not secured within one year from the date of this Agreement, either COTTMAN or OPERATOR shall be entitled to terminate this License Agreement by giving thirty (30) days written notice to the other party, and OPERATOR shall receive a refund of all deposit monies paid to COTTMAN, less all expenses incurred by COTTMAN as a result of this Agreement.

b. OPERATOR shall not execute any documents of purchase or lease for any such location without the prior written approval of COTTMAN as to location and terms of sale in the event of purchase, or as to the lease and location in the event of lease.

c. In the event OPERATOR purchases the CENTER location at any time during the term of this Agreement, or is the owner of the Center location prior to the execution of this AGREEMENT, OPERATOR does hereby grant to COTTMAN the option to lease the said location on substantially the same terms and conditions contained in any lease under which OPERATOR occupied the location as lessee, or if no such lease existed, then on terms and conditions which are commercially reasonable. The option herein granted may be exercised by COTTMAN for a period of thirty (30) days following the termination of this Agreement for any reason whatsoever.

d. In the event of lease, upon COTTMAN's written approval of the proposed location and lease, OPERATOR shall execute the lease and deliver a copy of the fully executed lease to COTTMAN. The lease shall contain a conditional assignment clause which shall provide that upon the termination of this Agreement, for any reason whatsoever, COTTMAN shall have the option for thirty (30) days to assume the obligations of and to replace OPERATOR as the lessee under said lease and at any time thereafter reassign the lease to a new OPERATOR. OPERATOR agrees not to terminate, renew or in any way alter or amend such lease during the term thereof, or any renewal term thereof, without COTTMAN's prior written consent, and any attempted termination, renewal, alteration or amendment shall be null and void and have no effect as to COTTMAN or COTTMAN's interests.

e. Except as otherwise provided in this Agreement, OPERATOR shall not assign its lease or sublet the CENTER, or any portion of the premises containing the CENTER.

4. Training and Commencement of Business.

a. Prior to opening the CENTER for business, OPERATOR shall attend COTTMAN's training program and complete the course to COTTMAN's satisfaction. During the training program, OPERATOR shall receive instruction, training and education in the operation of the CENTER. In the event OPERATOR fails to complete training to COTTMAN's satisfaction, COTTMAN, in its sole discretion, may terminate this Agreement immediately, and this Agreement shall be of no further force and effect, and neither COTTMAN nor OPERATOR shall have any further liability or obligation to the other, provided however, that the provisions of paragraphs 19 and 20 hereof shall not be affected by any such termination.

b. OPERATOR shall attend such additional training programs or meetings at such locations as COTTMAN may from time to time direct. All expenses of OPERATOR incurred in connection with attendance at training programs or sales meetings other than the initial training program shall be borne solely by OPERATOR.

c. OPERATOR shall maintain at all times during the term of this Agreement or any renewal thereof, a staff of trained employees sufficient to operate the CENTER in accordance with this Agreement. OPERATOR shall not employ any person who may be required by COTTMAN to complete a training program but who fails to do so for any reason whatsoever.

5. Services Rendered by COTTMAN

COTTMAN agrees to:

a. assist OPERATOR in obtaining a location and negotiating a lease;

b. assist OPERATOR with the layout of the CENTER and the installation of equipment;

c. assist OPERATOR in finding and evaluating personnel;

d. furnish to OPERATOR the Operator's Manual described in section 6, parts catalogs, and instructional and training materials for the purpose of providing guidance in the methods, procedures and techniques of operating a CENTER;

e. furnish from time to time such business information and literature as COTTMAN determines may be helpful in improving the operations of the CENTER;

f. advise and consult with OPERATOR during normal business hours on matters relating to all operations of the CENTER;

g. advise OPERATOR of new developments and improvements in the SYSTEM and to offer to OPERATOR services, facilities, rights and privileges substantially similar to those generally offered to other licensed participants in the SYSTEM;

h. provide initial training and additional training programs and meetings; and

i. continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks and other distinguishing aspects of the SYSTEM.

6.  Operator's Manual.

a.  COTTMAN shall lend to OPERATOR a manual published by COTTMAN (herein called the "Operator's Manual") which includes, in part, the business procedures, technical advice and rules and regulations for the operation of the CENTER.

b.  OPERATOR acknowledges and agrees that:

i. the Operator's Manual is the property of COTTMAN and shall remain its property during the term of this Agreement and any renewal hereof;

ii. the Operator's Manual contains confidential information which OPERATOR will protect as a trade secret, and that its loss will cause substantial damage to COTTMAN and the SYSTEM although the amount of such loss would be incalculable with any degree of accuracy. Consequently, in the event of loss of this Manual, OPERATOR agrees to pay to COTTMAN such sum as may be agreed upon for its replacement, as liquidated damages and not as a penalty;

iii. OPERATOR will not reprint or reproduce any portion of the Operator's Manual for any reason whatsoever;

iv. upon termination of this Agreement for any reason the Operator's Manual will be immediately returned to COTTMAN.

c.  COTTMAN may add to or otherwise modify the Operator's Manual, from time to time, whenever COTTMAN considers such additions or modifications desirable to improve or maintain the standards of the SYSTEM and the efficient operation thereof, or to protect or maintain the good will associated with the Cottman names and marks or to meet competition.

d.  From the date of the opening of the Center by OPERATOR, the provisions of the Operator's Manual as modified from time to time and the mandatory specifications, standards and operating procedures prescribed by COTTMAN and communicated to OPERATOR in writing, shall constitute provisions of this Agreement as if fully set forth herein. All references herein to this Agreement shall include the provisions of the Operator's Manual and all such mandatory specifications, standards and operating procedures.

I:\USERS\EILEEN\COMPLIAN\LICAGR\NEW\UNILAD21.WPD        4

### 7. Certain Obligations of OPERATOR.

In order to maintain the high quality and uniform standards associated with the SYSTEM and to protect its good will and reputation, OPERATOR agrees to:

a. deal fairly and honestly with the public or with COTTMAN;

b. honor and comply with the terms of all advertising placed by or at the direction of COTTMAN or OPERATOR;

c. devote his best efforts and full and exclusive time to the day-to-day operations and development of the license and the business of the CENTER;

d. operate the CENTER exclusively as an automotive transmission business and engage in no other type of business at the CENTER;

e. keep the CENTER open for business the minimum number of days per week and hours per day prescribed by COTTMAN from time to time;

f. keep and maintain the CENTER and its appearance in a clean and orderly manner consistent with the operation of a first class automotive business and the directives of COTTMAN deemed by it to be necessary to protect the standards of quality and uniformity of the CENTERS and the SYSTEM;

g. operate the CENTER in accordance with the methods, procedures and techniques included in the Operator's Manual as modified from time to time or otherwise directed or approved by COTTMAN;

h. comply at all times with all federal, state, provincial, county, city and other local laws, regulations and ordinances;

i. maintain at all times (except when fire or other casualty so prevents) sufficient supplies and personnel to operate the CENTER at maximum capacity and efficiency;

j. register the fictitious name "Cottman Transmission Center" in accordance with applicable local, state or provincial laws and operate the CENTER under the name COTTMAN and under no other name, and use and display the Cottman names and marks prominently in such manner as may from time to time be directed in writing by COTTMAN and not use or prominently display any other trade name, trademark, service mark or other designation during the term of this Agreement;

k. permit COTTMAN during business hours to inspect the premises of the CENTER, confer with OPERATOR and OPERATOR's employees and customers, check inventories, methods, books and records, and perform any other inspection deemed by COTTMAN to be necessary to protect the standards of quality and uniformity of the SYSTEM and OPERATOR's performance under this Agreement;

l. submit to COTTMAN uniform reports and financial statements in accordance with the procedure set forth in the Operator's Manual, and deliver a copy of OPERATOR's federal income tax return relating to the operations of the CENTER within thirty (30) days after such return is filed;

m. maintain a system of bookkeeping and record keeping approved by COTTMAN, keep his books and records at the CENTER at all times and make them available during business hours to authorized representatives of COTTMAN for the purpose of verifying the accuracy of OPERATOR's reports. If such verification reveals that the gross receipts reported by OPERATOR to COTTMAN are more than two (2%) percent less than OPERATOR's actual gross receipts, OPERATOR shall reimburse COTTMAN for all expenses connected with such verification, including, but not limited to, reasonable accounting and legal fees, and without limitation to any other rights and remedies Cottman in its sole discretion may elect to pursue, OPERATOR shall pay to COTTMAN immediately any delinquent license fees, together with interest at the rate of eighteen percent (18%) [or the maximum rate of interest allowed by law if less than eighteen percent (18%)] per year, calculated from the date when such license fees should have been paid to the date of actual payment;

n. use only numerically consecutive repair orders provided by COTTMAN, for which COTTMAN may make a reasonable charge;

o. purchase all equipment, parts, and other supplies from COTTMAN or suppliers approved by COTTMAN, or from other suppliers whose parts and supplies conform to original equipment manufacturers' specifications or to the minimum standards of quality, performance and uniformity established from time to time by COTTMAN.

### 8. Continuing License Fees.

During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing license fee (the "continuing license fee") equal to seven and one-half (7 1/2%) percent of the gross business transacted by OPERATOR (as used in this section, the term "gross business" shall include all work completed and delivered to customers of the CENTER, exclusive of sales tax). The continuing license fee shall be paid weekly on each Tuesday based upon gross business transacted during the preceding calendar week. The continuing license fee shall be remitted together with a report showing the computation thereof upon forms provided by COTTMAN.

### 9. Advertising.

a. During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing advertising fee (the "continuing advertising fee") in the amount of Six hundred five dollars ($605.00) per week or such other adjusted amount as may be determined from time to time pursuant to Section 9.d. of this agreement payable at the same time and in the same manner as set forth in Section 8 of this Agreement.

b. The continuing advertising fee shall not be used for general operating expenses of COTTMAN, but shall be used and expended for media costs, commissions, fees, production costs, and other costs of all advertising which is published, broadcast, displayed, or otherwise disseminated either during the calendar year within which such continuing advertising fee is received by COTTMAN or during the immediately succeeding calendar year. COTTMAN may, in its sole discretion, suspend the placement of advertising for OPERATOR if any payments due COTTMAN under this Agreement are not paid the date upon which the payments are due. The suspension in advertising may continue until OPERATOR has paid current all monies owed COTTMAN. OPERATOR is not relieved of any obligation to make continuing advertising fee payments during the term of any suspension.

c. All decisions from time to time regarding whether to utilize national, regional, or local advertising, or some combination thereof, and all decisions regarding selecting of the particular media and advertising content, shall be within the sole discretion of COTTMAN and such agencies or others as it may appoint, provided however, that except for those amounts utilized for national advertising, all monies actually received from OPERATOR shall be spent for the local or regional market area of the CENTER.

d. The continuing advertising fee may be adjusted from time to time either nationally or by region or market area in Cottman's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) in any calendar year, and provided further that no adjustment shall be deemed retroactive to any prior year.

e. Nothing herein shall be deemed to prohibit OPERATOR from engaging in any advertising or promotion of his CENTER or business, in addition to the advertising or promotion paid for by COTTMAN, provided such advertising or promotion shall be at the sole cost of OPERATOR and without deduction or credit against any fees or other monies owed by OPERATOR to COTTMAN, and shall be subject to the provisions of section 9.f. of this Agreement.

f. OPERATOR shall not use, display, publish, broadcast, or in any manner disseminate any advertising or promotional material unless the same has been first approved in writing by COTTMAN. In the event that COTTMAN from time to time furnishes to OPERATOR any advertising, promotional or informational materials to be used, displayed, or distributed in or about CENTER, OPERATOR agrees to follow the instructions of COTTMAN in connection therewith.

10. Insurance.

a. OPERATOR shall purchase and at all times during the term of this Agreement shall maintain in full force and effect policies of insurance as follows:

i. Workmen's Compensation insurance, in amounts prescribed by law;

ii. insurance against all types of public liability including employer's liability insurance, liability insurance under either a comprehensive general liability policy or an occurrence basis or a garage liability policy, with bodily injury and property damage liability insurance, products liability or completed operations liability insurance, automobile liability insurance, including owned and non-owned hired cars, trucks, trailers and other motor vehicles, and customer automobile liability insurance;

iii. such additional insurance as may be required by the terms of any lease for the premises of the CENTER.

b. All policies of insurance required under this section shall be in form and in such amounts as COTTMAN shall reasonably determine with companies reasonably satisfactory to COTTMAN and shall protect, as named insureds, OPERATOR, COTTMAN and any other party designated by COTTMAN. All such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured. OPERATOR shall furnish COTTMAN, any other named insured, and all other persons designated by COTTMAN, certificates issued by each of OPERATOR's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty (30) days prior written notice from the insurer to each certificate holder. New certificates evidencing renewal of such insurance shall be furnished at least thirty (30) days prior to the date of expiration of each such policy. Within five (5) days of any request by COTTMAN, OPERATOR shall deliver the original of all such insurance policies to COTTMAN for examination.

c. If OPERATOR fails to obtain or maintain any insurance policy containing all the coverages, clauses and provisions required under this section, COTTMAN may, at its election, obtain and maintain said insurance for and in the name of OPERATOR. Within fifteen (15) days of any written request of COTTMAN, OPERATOR shall furnish all information necessary to obtain and maintain such insurance and shall pay all costs thereof.

11. Cottman Names and Marks and Trade Secrets.

a. OPERATOR hereby acknowledges the validity of the Cottman names and marks and that COTTMAN is the owner of all right, title and interest therein. OPERATOR agrees that he will use the COTTMAN names and marks in full compliance with specifications prescribed from time to time by COTTMAN and that all such usage and the good will established thereby shall inure to the exclusive benefit of COTTMAN.

b. OPERATOR represents and warrants that:

i. he will not contest, directly or indirectly, COTTMAN's ownership, title, right or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or contest COTTMAN's sole right to register, to use, and to license others to use such COTTMAN names and marks, trade secrets, methods, procedures and techniques and any other mark or name which incorporates the word "Cottman";

ii. with the exception of the use of the names and marks in the manner expressly specified and authorized under this Agreement and the registration of a fictitious name solely in connection with the operation of the CENTER, he will not use or register or attempt to use or register in OPERATOR's name or in the name of any other person or entity any name or mark, corporate name or any designation of any kind utilizing the COTTMAN names and marks, or any other materials used in the SYSTEM; and

iii. he will not disclose to any person or entity except in the ordinary course of business, any data or information contained in the Operator's Manual and he will keep and maintain such data and information and other materials furnished to OPERATOR by COTTMAN as trade secrets.

12. Protection of SYSTEM.

If OPERATOR learns of any actual or threatened infringement or piracy of the Cottman names and marks, trade secrets, methods, procedures or techniques used in the SYSTEM (the "Infringement") or of any infringement or piracy claim made against OPERATOR by a party other than COTTMAN ("Third Party Claim"), OPERATOR shall immediately notify COTTMAN in writing of the Infringement or Third Party Claim. COTTMAN shall in the exercise of its sole discretion determine what action, if any, to take with respect to the foregoing and shall bear the expense of any such action. OPERATOR agrees to be named party and to give his full cooperation in such action if so requested by COTTMAN. If OPERATOR is named as a party in any legal proceeding brought by a party other than COTTMAN for infringement of trade names, trademarks, service marks, copyrights or trade secrets, based upon OPERATOR's use of the Cottman names and marks, any such proceeding shall be defended in the name of OPERATOR by and at the expense of COTTMAN.

13. Customer Warranties.

OPERATOR recognizes that it is in the mutual best interest of OPERATOR and other operators participating in the SYSTEM for COTTMAN to establish uniform guarantees and warranties for labor and parts throughout the SYSTEM. OPERATOR therefore agrees to offer customers of the CENTER such guarantees and warranties as may from time to time be prescribed by COTTMAN, and no others, and to honor customer complaints made within the applicable guarantee or warranty period arising from work performed at any other CENTER. OPERATOR acknowledges that such guarantees and warranties are made to the customer by OPERATOR and not by COTTMAN, and that COTTMAN shall not be responsible for reimbursing any CENTER for work performed by any other CENTER. OPERATOR shall be entitled to be reimbursed by the operator of the CENTER which originally guaranteed or warranted the work for the cost of any automotive supplies, accessories, replacement parts and labor performed in satisfaction of such guarantee or warranty. OPERATOR shall fully comply with all of the policies and procedures concerning intercenter warranties as set forth from time to time in the Operator's Manual, as referred to in section 6 of this Agreement.

14. Telephone Service.

OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

15. Signs.

OPERATOR shall erect outside and inside signs of such size and construction as directed by COTTMAN. No other signs may be erected or used. The outside signs shall be leased from COTTMAN for the term of this Agreement pursuant to terms and provisions as set forth on a separate Lease Agreement attached hereto as Appendix B or may be leased or purchased from any other supplier upon written approval by COTTMAN. In the event OPERATOR purchases any sign from COTTMAN or leases or purchases any sign from a supplier other than COTTMAN, OPERATOR acknowledges and agrees that COTTMAN shall have exclusive control of the use and display of all sign faces bearing the Cottman name or marks.

16. Restrictions on Change of Ownership.

a. All rights and interests of OPERATOR arising from this Agreement are personal to OPERATOR and except as otherwise provided in this section 16, OPERATOR shall not, without COTTMAN's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the license granted hereby, or in the lease for the premises at which the CENTER is located, and any purported sale, assignment, transfer or encumbrances shall be null and void.

b. OPERATOR may assign this Agreement to a corporation in which OPERATOR owns a majority of the voting control and equity, provided that:

          i.  OPERATOR actively manages the corporation and continues to devote his best efforts and full and exclusive time to the day-to-day operation and development of the license and the business of the CENTER; and

          ii.  the corporation is newly organized and its activities are confined exclusively to acting as a COTTMAN licensee under this Agreement; and

          iii.  the corporation executes a document in such form as shall be approved by COTTMAN in which it agrees to become a party to and to be bound by all the provisions of this License Agreement to the same extent as if it were named as the OPERATOR herein; and

          iv.  OPERATOR remains personally liable in all respects under this Agreement and OPERATOR and all officers, directors and stockholders of the corporation execute in form approved by COTTMAN a personal guaranty and agreement not to further transfer the stock; and

          v.  all stock certificates representing shares in the corporation bear the following legend:

          The shares of stock represented by this certificate are subject to the terms and conditions set forth in a License Agreement dated *July* 14 , 1999 , between

          David Faulkner and Robyn Faulkner

          (OPERATOR) and Cottman Transmission Systems, Inc., copies of which are on file in the principal offices of OPERATOR and COTTMAN.

    c.  Anything herein to the contrary notwithstanding:

          i.  If OPERATOR (or if OPERATOR dies or becomes incapacitated, his personal representative) desires to sell his CENTER and receives from a fully disclosed third person a bona fide written offer to purchase his CENTER, license and interests under this Agreement or if OPERATOR desires to sell the stock of any corporation to which they have been transferred pursuant hereto, he shall give COTTMAN written notice and a copy of such offer and COTTMAN shall have the option, exercisable within thirty (30) days after receipt of such notice, to purchase such CENTER, license and interests in this Agreement or corporate stock, including the lease, on the same terms and conditions as offered by said third person provided that COTTMAN may substitute equivalent cash for any form of payment offered by said third person. If COTTMAN does not exercise its option and if such third person is of good character, reputation and financial condition and acceptable to COTTMAN, OPERATOR shall have the right for a period of ninety (90) days after the expiration of COTTMAN's option period to accept the offer and to assign OPERATOR's interests to such third person (subject to the provisions of subsection d of this section);

          ii.  if OPERATOR dies and his personal representative does not desire to sell his CENTER, and if under controlling local law the deceased OPERATOR's interests in the CENTER, and this Agreement are distributable to heirs or legatees who are members of his immediate family and who otherwise would qualify as assignees under the terms of this section, then such attempted assignment by operation of law or will shall not be deemed in violation hereof, provided such heirs or legatees accept the conditions imposed in this section on otherwise permitted assignees.

    d.  Consent to an assignment, sale or transfer otherwise permitted or permissible as reasonable may be refused by COTTMAN unless:

          i.  all obligations of OPERATOR in connection with the CENTER are assumed by assignee, buyer or transferee;

          ii.  all prior ascertained or liquidated debts of OPERATOR in connection with the CENTER are paid concurrently with the assignment, sale or transfer;

iii. OPERATOR is not in default hereunder;

iv. assignee, buyer or transferee, prior to the effective date of the assignment, sale, or transfer, satisfactorily completes the Cottman training program required of new operators;

v. assignee, buyer or transferee executes COTTMAN's then current standard License Agreement for a full term as provided therein;

vi. OPERATOR, assignee, buyer or transferee, prior to the effectiveness of the assignment, sale or transfer, pays to COTTMAN its then current training fee and a reasonable amount determined by COTTMAN to reimburse COTTMAN for its reasonable legal and accounting fees, credit and investigation charges and expenses incurred as a consequence of such assignment, sale or transfer; and

vii. OPERATOR and all officers, directors and shareholders of a corporate OPERATOR shall execute a general release under seal in favor of COTTMAN.

17. Relationship of the Parties; Indemnification.

a. The relationship between COTTMAN and OPERATOR is strictly that of a licensor and licensee and OPERATOR is an independent contractor. This Agreement does not create a joint venture, partnership, or agency and any act or omission of either party shall not bind or obligate the other except as expressly set forth in this Agreement.

b. OPERATOR recognizes that COTTMAN has entered into this Agreement in reliance upon and in recognition of the fact that OPERATOR will have full responsibility for the management and operation of the CENTER and that the amount of profit or loss resulting from the operation of the CENTER will be directly attributable to the performance of OPERATOR.

c. OPERATOR shall protect, indemnify and save COTTMAN harmless against any and all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses, and liabilities of any kind or nature arising directly or indirectly out of or in connection with the operation of the CENTER.

d. Except as expressly granted herein, OPERATOR recognizes that nothing contained in this Agreement shall be construed as giving to OPERATOR or to any other person or entity, any right or interest in the Cottman names and marks, trade secrets, methods, procedures or techniques developed by COTTMAN and used in the SYSTEM. Further, nothing contained herein shall be construed as limiting COTTMAN's right, title or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or COTTMAN's sole and exclusive right to register, to use and to license others to use such names and marks, trade secrets, methods, procedures and techniques.

e. In all public records and in his relationship with third parties as well as on letterheads and business forms, OPERATOR shall indicate his independent ownership of the CENTER and that he is a licensee of COTTMAN. OPERATOR agrees to conspicuously display both inside and outside the CENTER a notification that he is solely an independent licensee of COTTMAN.

18. Termination.

a. This paragraph a. shall apply only to Elite License Agreements. COTTMAN or OPERATOR may terminate this Agreement by giving thirty (30) days written notice to the other, if, within one (1) year from the date hereof, OPERATOR fails to open his CENTER, as set forth in either Sections 1.c. or 3.a. of this Agreement.

a. This paragraph a. shall apply to all License Agreements. COTTMAN, at is option, and without prejudice to any other rights or remedies which it may have hereunder, at law or in equity may terminate this Agreement:

i. if OPERATOR fails to complete the initial training program to COTTMAN's satisfaction, this Agreement will be terminated immediately; or

ii. immediately and without prior notice if in the sole judgment of COTTMAN, OPERATOR breaches subsection 7.a. or 7.b. of this Agreement; or

iii. if OPERATOR is delinquent in the payment of the continuing license fee or the continuing advertising fee, or any other payment due to COTTMAN and if the default is not cured within ten (10) days after COTTMAN gives notice in writing to cure such default;

iv. immediately and without prior notice if OPERATOR shall be adjudicated a bankrupt; if a receiver (permanent or temporary) of his property, or any part thereof is appointed by a court of competent authority; if he makes a general assignment for the benefit of his creditors; if execution is levied against his business or property; if OPERATOR abandons the CENTER or ceases its operation for a period of more than five (5) consecutive regular business days;

v. if OPERATOR defaults in the performance of any of the other terms, conditions and obligations of this Agreement or of his lease for the premises at which the CENTER is located and if the default is not cured within thirty (30) days after COTTMAN gives notice to OPERATOR in writing to cure such default.

b. Notwithstanding anything contained herein to the contrary, COTTMAN shall not be required to give OPERATOR notice in the case of a default hereunder or to afford OPERATOR any period within which to cure the same and COTTMAN may terminate this Agreement immediately and without prior notice on any default if, within twelve (12) months immediately preceding the occurrence of such default, OPERATOR has been given notice of any default hereunder on two (2) prior occasions, whether or not such default has been cured.

c. If there are now, or hereafter shall be, other license agreements in effect between COTTMAN and OPERATOR, a default by OPERATOR under the terms and conditions of this or any other of such agreements, shall at the option of COTTMAN, constitute a default under all such agreements.

19. Effect of Termination.

Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of its current term by virtue of OPERATOR's failure to renew the same as provided in section 2 hereof (sometimes herein "Expiration") OPERATOR shall cease to be a COTTMAN licensee, and

a. OPERATOR agrees:

i. promptly to pay COTTMAN all amounts owing from OPERATOR to COTTMAN;

ii. immediately to discontinue the use of all Cottman names and marks, signs, structures, forms of advertising, telephone listings and service, manuals, and all materials and products of any kind which are identified or associated with the SYSTEM or COTTMAN and to return all such materials and products to COTTMAN;

iii. thereafter to make no representations or statements that OPERATOR is or ever was in any way approved, endorsed or licensed by COTTMAN or associated or identified with COTTMAN or the SYSTEM in any manner whatsoever or that OPERATOR is a former COTTMAN OPERATOR; provided, however, OPERATOR shall honor all customer complaints made within the applicable guarantee or warranty period arising from work performed at the Center;

iv. immediately to take all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Cottman names and marks in order to effectuate the removal of the Cottman names and marks from such registration or filing.

b. COTTMAN shall have the option to purchase all of OPERATOR's right, title and interest in the CENTER and all equipment contained therein. If COTTMAN intends to exercise its option, COTTMAN shall notify OPERATOR of such intention at the time of termination or in the case of Expiration, within ten (10) days prior to the expiration of the current term of this Agreement. The full purchase price of the CENTER shall be:

i. in the case of Expiration, the fair market value of the equipment and parts then located at the CENTER less all outstanding liabilities of the CENTER;

ii. in the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the CENTER or OPERATOR's cost, less depreciation on the equipment computed on a ten (10) year straight line basis, less all outstanding liabilities of the CENTER. COTTMAN shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the CENTER and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, COTTMAN shall apply the purchase price in such manner as COTTMAN, in its own discretion, shall determine. In no event, however, shall COTTMAN become liable for any of the debts and liabilities of OPERATOR or the CENTER and OPERATOR shall remain responsible for all outstanding debts and liabilities of the CENTER which remain unsatisfied subsequent to the distribution by COTTMAN of the purchase price funds;

iii. "Fair Market Value" as used in this section 19, shall be determined by an appraisal from an independent third party acceptable to COTTMAN. The costs of such appraisal shall be borne equally by COTTMAN and OPERATOR.

c. If, within five (5) days after termination, OPERATOR fails to remove all displays of the COTTMAN names and marks and any other materials of any kind from the CENTER which are identified or associated with the SYSTEM or COTTMAN, COTTMAN may enter the CENTER or premises to effect such removal. In such event, COTTMAN shall not have liability to OPERATOR therefor nor be accountable or required to pay for such displays or materials.

d. If, within three (3) days after termination OPERATOR has not taken all steps necessary to amend, transfer or terminate telephone listings and service, any registration or filing of any fictitious name or any other registration or filing containing the COTTMAN names and marks, OPERATOR hereby irrevocably nominates, constitutes and appoints COTTMAN or any Prothonotary, Clerk of Court, or Attorney of any Court of Record as his true and lawful attorney for him and in his name and on his behalf to take all such action as may be necessary to amend, transfer or terminate all such telephone listings and service, registrations and filings of such fictitious name or any other registration or filing containing the COTTMAN names and marks, without liability to OPERATOR for so doing. In the event any action is required to be taken by or on behalf of COTTMAN pursuant to this subsection 19.d., the telephone company and all listing agencies, without liability to OPERATOR, may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

e. Termination of this Agreement shall not affect, modify or discharge any claims, rights, causes of action or remedies, which COTTMAN may have against OPERATOR, whether under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

f. OPERATOR hereby irrevocably authorizes COTTMAN to enter upon and take possession of the CENTER and to take in the name of OPERATOR, all other actions necessary to effect the provisions of this section, and any such entry or other action shall not be deemed a trespass or other illegal act, and COTTMAN shall not be liable in any manner to OPERATOR for so doing.

20.  Covenant Not to Compete.

OPERATOR acknowledges that as a participant in the SYSTEM, OPERATOR will receive confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by COTTMAN. Therefore, to protect the SYSTEM and COTTMAN and to induce COTTMAN to grant to OPERATOR the license as set forth herein, OPERATOR represents and warrants:

a. Except for the business contemplated by this Agreement, during its term OPERATOR shall not engage in any business the same as, similar to, or in competition with any CENTER, COTTMAN or the SYSTEM.

b. For a period of two (2) years after the termination of this Agreement for any reason, OPERATOR shall not:

i. within a radius of ten (10) miles of OPERATOR's former CENTER and three (3) miles of any other CENTER in operation at the time of termination or any CENTER that has commenced operation during said two (2) year period, begin or engage in any business the same as, similar to or in competition with such CENTER; or

ii. within the territorial boundaries of the United States, Canada, Puerto Rico, Australia, and the Virgin Islands, as a licensor, franchisor, or similar organization, engage in any business, the same, similar to, or in competition with, COTTMAN or the SYSTEM.

c. As used in subsections 20.a. and 20.b. above:

i. "engage in" shall include, but not be limited to, activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, lessor, principal, broker, agent, employee, consultant, lender or otherwise; and

ii. "in competition with" shall include, but not be limited to:

(a) the request of any present or future supplier, customer or operator of a CENTER to curtail or cancel its business relationship with any CENTER, COTTMAN or the SYSTEM,

(b) the disclosure of the identity of any past, present or future customer, supplier or operator of any CENTER, and

(c) the solicitation, canvassing or the authorization of any other person to solicit or canvass any past, present or future customer, supplier or operator of a CENTER.

As used in this subsection 20.c.ii., "future supplier, customer or operator" shall mean a supplier, customer, or operator who will have had a business relationship with a CENTER, COTTMAN or the SYSTEM during the term of this Agreement or during a period of one (1) year following the termination of this Agreement.

d. OPERATOR shall not at any time, directly or indirectly, divulge, furnish or make accessible to any person or entity financial or confidential information, trade secrets, methods, procedures, or techniques of any kind relating to any aspect of the operations of the CENTER, COTTMAN or the SYSTEM.

e. OPERATOR acknowledges that in view of the nature of the SYSTEM and the business of COTTMAN, the restrictions contained in this section 20 are reasonable and necessary to protect the legitimate interests of the SYSTEM and COTTMAN and that any violation of such restrictions will result in irreparable injury to the SYSTEM or COTTMAN. Therefore, OPERATOR acknowledges that, in the event of such violation, COTTMAN shall be entitled to preliminary and permanent injunctive relief and damages as well as an equitable accounting of all earnings, profits, and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which COTTMAN shall be entitled, and the arbitration provisions of section 21 shall not apply to any equitable proceeding seeking enforcement of the provisions of this section 20. If OPERATOR violates any restriction contained in this section 20, and it is necessary for COTTMAN to seek equitable relief, the restrictions contained herein shall remain in effect until two (2) years after such relief is granted.

f. OPERATOR agrees that the provisions of this covenant not to compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restriction contained in this section 20 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

21. Arbitration.

Any controversy or claim arising out of or relating to this Agreement may, by agreement, be settled by arbitration in the City of Philadelphia, Pennsylvania by a panel of three (3) arbitrators (the "arbitrators") in accordance with the rules of the American Arbitration Association then in effect. The decision of the Arbitrators shall be final and binding on the parties and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction. Each party shall be responsible for the payment of his or its legal expenses and the fees and expenses of arbitration except that the Arbitrators shall be paid by the losing party. The Arbitrators shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification.

22. Expenses

a. In addition to the payment of the continuing license fee set forth in section 8 hereof, and the continuing advertising fee in section 9 hereof, OPERATOR agrees to pay all costs incurred by COTTMAN in collecting such fees and all other payments due hereunder and incurred in enforcing the provisions of this Agreement, including but not limited to, the cost of all telephone calls, telegrams, travel, legal expenses and correspondence.

b. OPERATOR shall pay COTTMAN a late charge upon all amounts due and owing to COTTMAN in an amount equal to one and one-half percent (1-1/2%) of the average unpaid balance per month. If the late charge violates any usury or similar law, then the late charge will instead be the maximum amount allowed under applicable law. In addition, for each gross weekly business report not received by COTTMAN within two (2) weeks from the date on which it was due, OPERATOR shall pay COTTMAN a late charge of ten dollars ($10.00) per report, per week.

23. Waiver.

Waiver by COTTMAN or OPERATOR of any violation or default hereunder shall not alter or impair either party's right with respect to any subsequent violation or default nor shall any delay or omission on the part of either party to exercise any right arising from such violation or default alter or impair such party's rights as to the same or any future violation or default. An acceptance by COTTMAN of any payment from the OPERATOR after the date on which such payment is due shall not operate as a waiver of OPERATOR's default or violation hereunder nor alter or impair COTTMAN's rights with respect to such violation or default.

24. Successors.

Except as otherwise specifically set forth in this Agreement, this Agreement shall inure to and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns. COTTMAN shall have the right to assign its rights and interests under this Agreement, provided that the assignee shall agree in writing to assume all obligations undertaken by COTTMAN hereunder. Such assignment shall discharge COTTMAN from all other obligations as set forth in this Agreement.

25. Notice.

Every notice under this Agreement shall be in writing and delivered personally or by registered or certified mail, return receipt requested, addressed to the party to whom it is directed at the address hereinabove set forth or at such other address as one party shall provide to the other in writing. All notices shall be effective when deposited, postage prepaid, in the mail and the return receipt shall be conclusive evidence thereof.

26. Risk of Operations.

OPERATOR recognizes the uncertainties inherent in all business ventures. OPERATOR agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to OPERATOR, either by COTTMAN or anyone acting on its behalf or purporting to represent it, including, but not limited to, the prospects for successful operations, the level of business or profits that OPERATOR might reasonably expect, the desirability, profitability or expected traffic volume or profit of the CENTER (whether or not COTTMAN assisted OPERATOR in the selection of the location of the CENTER), the costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the CENTER or as to the quality of any products or services to be sold by OPERATOR to its customers hereunder. OPERATOR acknowledges that all such factors are necessarily dependent upon variables beyond COTTMAN's control, including without limitation, the ability, motivation and amount and quality of effort expended by OPERATOR.

27. Severability.

If any portion of any section of this Agreement shall conflict with the applicable provisions of Federal, State or local law, the conflicting portion shall be construed in accordance with the specific provisions of the applicable law, and the remaining portion of said section, as well as the remainder of this Agreement, shall remain in full force and effect.

28. Jurisdiction, Venue and Controlling Law.

This Agreement and all related agreements have been entered into in the Commonwealth of Pennsylvania and any matter whatsoever which arises out of or is connected in any way with the Agreement or the franchise shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

a. With respect to any legal proceedings arising out of or connected in any way to this Agreement or the franchise, OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought only in such courts and the parties further agree that the mailing (by certified mail, return receipt requested) to such party's last known address of any process shall constitute lawful and valid process.

b. In the event OPERATOR institutes legal proceedings in any court other than those specified, he shall assume all of COTTMAN's costs in connection therewith, including but not limited to, reasonable counsel fees.

29. JURY WAIVER

OPERATOR AND COTTMAN HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

30. Entire Agreement.

This instrument contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations or warranties, either oral or written, except those contained in this Agreement. Except as set forth in Section 6.c., this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

WITNESS:                                    COTTMAN TRANSMISSION SYSTEMS, INC.

_____            BY:_____(SEAL)
                                                Todd P. Leff, President

WITNESS:                                    OPERATOR:

_____            _____(SEAL)
                                                David Faulkner

WITNESS:                                    OPERATOR:

_____            _____(SEAL)
                                                Robyn Faulkner

WITNESS:                                    OPERATOR:

_____            _____(SEAL)



# TRANSFER OF LICENSE TO A CORPORATION

The undersigned, an officer, director and owner of a majority of the issued and outstanding voting stock of the corporation set forth below and OPERATOR of a COTTMAN Transmission Center under a License Agreement executed on the date set forth below between himself and Cottman Transmission Systems, Inc. (COTTMAN) granting him a license to operate the CENTER at the location set forth below and the other undersigned directors, officers and shareholders of the corporation, who together with OPERATOR constitute all of the shareholders of the corporation, in order to induce COTTMAN to consent to the assignment of the License Agreement to the corporation in accordance with the provisions of Section 16 of the License Agreement agree as follows:

1. The undersigned OPERATOR shall remain personally liable in all respects under the License Agreement and all the other undersigned officers, directors and stockholders of the corporation, intending to be legally bound hereby, agree jointly and severally to be personally bound by the provisions of the License Agreement, specifically including the restrictive covenant contained in Section 20 hereof, to the same extent as if each of them were the OPERATOR as set forth in the License Agreement and they jointly and severally personally guarantee all of the OPERATOR's obligations set forth in said Agreement.

2. The undersigned agree not to transfer any stock in the corporation without the prior written approval of LICENSOR and agree that all stock certificates representing shares in the Corporation shall bear the following legend:

> The shares of stock represented by this certificate are subject to terms and conditions set forth in a License Agreement dated July 14, 1999, between
>
> David Faulkner and Robyn Faulkner
>
> (OPERATOR) and Cottman Transmission Systems, Inc. copies of which are on file in the principal offices of OPERATOR and Cottman.

3. David Faulkner and Robyn Faulkner shall devote their best efforts and full and exclusive time to the day-to-day operation and development of the License and the business of the Center.

4. TOOG & DEENIE INC. hereby agrees to become a party to and to be bound by all the provisions of the License Agreement executed on the date set forth below between OPERATOR and COTTMAN to the same extent as if it were named as the OPERATOR therein.

Date of License Agreement: _July 14, 1999_____

Location of Center: Ft. Worth, Texas_____

WITNESS:

_Laura Long_____    _David Faulkner_____ (Seal)
                                 David Faulkner

WITNESS:

_Laura Long_____    _Robyn Faulkner_____ (Seal)
                                 Robyn Faulkner

WITNESS:

_____    _____ (Seal)

Attest:

_____    By: _Robyn Faulkner_____ (Seal)
        Secretary                           President

                                 By: _David Faulkner_____ (Seal)
                                           Vice President

    (Corporate Seal)             By: _____ (Seal)
                                           Secretary

                                 By: _____ (Seal)
                                           Treasurer

In consideration of the execution of the above agreement, Cottman Transmission Systems, Inc. hereby consents to the above assignment on this _20th_ day of _July_ ~~19~~ 2001.

COTTMAN TRANSMISSION SYSTEMS, INC.

By: _Todd P. Leff_____ (SEAL)
    Todd P. Leff, President

# Cottman

**TRANSMISSION SYSTEMS, LLC**

*Executive Offices* 240 New York Drive • Fort Washington, PA 19034
215-643-5885 • Fax: 215-643-2519
www.cottman.com

May 3, 2002

VIA CERTIFIED MAIL – RRR and REGULAR MAIL

Mr. David Faulkner
Mrs. Robyn Faulkner
Toogs & Deenie, Inc.
Cottman Transmission Center
3611 E. Highway 377
Granbury, TX 76049

Re:    Breach of License Agreement
       Cottman Transmission Center
       3611 E. Highway 377
       Granbury, TX 76049

Dear Mr. and Mrs. Faulkner:

This letter shall serve as Formal Notice of the following breaches of your License Agreement
dated July 14, 1999, with Cottman Transmission Systems, LLC

1.    Failure to pay continuing license fees in the amount of Thirty four dollars and
eight one cents ($34.81) as of April 27, 2002 on gross sales in violation of Section 8 of your
License Agreement.

2.    Failure to pay continuing advertising fees in the amount of Seven thousand seven
hundred one dollars. ($7,701.00) as of April 27, 2002 on gross sales in violation of Section 9 of
your License Agreement.

3.    Failure to pay sign rent in the amount of Nine dollars and thirty eight cents
($9.38) as of April 27, 2002.

In addition to the above violations, you have failed to submit the weekly business report for the
week of 4/27/02. The projected fees based on your verbal gross sales owed for the unreported
weeks are as follows:

        a. License Fees      -      $ 450.00

        b. Advertising Fees  -      $ 675.00