e. furnish from time to time such business information and literature as COTTMAN determines may be helpful in improving the operations of the CENTER;

f. advise and consult with OPERATOR during normal business hours on matters relating to all operations of the CENTER;

g. advise OPERATOR of new developments and improvements in the SYSTEM and to offer to OPERATOR services, facilities, rights and privileges substantially similar to those generally offered to other licensed participants in the SYSTEM;

h. provide initial training and additional training programs and meetings; and

i. continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks and other distinguishing aspects of the SYSTEM.

6. Operator's Manual.

a. COTTMAN shall lend to OPERATOR a manual published by COTTMAN (herein called the "Operator's Manual") which includes, in part, the business procedures, technical advice and rules and regulations for the operation of the CENTER.

b. OPERATOR acknowledges and agrees that:

i. the Operator's Manual is the property of COTTMAN and shall remain its property during the term of this Agreement and any renewal hereof;

ii. the Operator's Manual contains confidential information which OPERATOR will protect as a trade secret, and that its loss will cause substantial damage to COTTMAN and the SYSTEM although the amount of such loss would be incalculable with any degree of accuracy. Consequently, in the event of loss of this Manual, OPERATOR agrees to pay to COTTMAN such sum as may be agreed upon for its replacement, as liquidated damages and not as a penalty;

iii. OPERATOR will not reprint or reproduce any portion of the Operator's Manual for any reason whatsoever;

iv. upon termination of this Agreement for any reason the Operator's Manual will be immediately returned to COTTMAN.

c. COTTMAN may add to or otherwise modify the Operator's Manual, from time to time, whenever COTTMAN considers such additions or modifications desirable to improve or maintain the standards of the SYSTEM and the efficient operation thereof, or to protect or maintain the good will associated with the Cottman names and marks or to meet competition.

d. From the date of the opening of the Center by OPERATOR, the provisions of the Operator's Manual as modified from time to time and the mandatory specifications, standards and operating procedures prescribed by COTTMAN and communicated to OPERATOR in writing, shall constitute provisions of this Agreement as if fully set forth herein. All references herein to this Agreement shall include the provisions of the Operator's Manual and all such mandatory specifications, standards and operating procedures.

In order to maintain the high quality and uniform standards associated with the SYSTEM and to protect its good will and reputation, OPERATOR agrees to:

 a. deal fairly and honestly with the public or with COTTMAN;

 b. honor and comply with the terms of all advertising placed by or at the direction of COTTMAN or OPERATOR;

 c. devote his best efforts and full and exclusive time to the day-to-day operations and development of the license and the business of the CENTER;

 d. operate the CENTER exclusively as an automotive transmission business and engage in no other type of business at the CENTER;

 e. keep the CENTER open for business the minimum number of days per week and hours per day prescribed by COTTMAN from time to time;

 f. keep and maintain the CENTER and its appearance in a clean and orderly manner consistent with the operation of a first class automotive business and the directives of COTTMAN deemed by it to be necessary to protect the standards of quality and uniformity of the CENTERS and the SYSTEM;

 g. operate the CENTER in accordance with the methods, procedures and techniques included in the Operator's Manual as modified from time to time or otherwise directed or approved by COTTMAN;

 h. comply at all times with all federal, state, provincial, county, city and other local laws, regulations and ordinances;

 i. maintain at all times (except when fire or other casualty so prevents) sufficient supplies and personnel to operate the CENTER at maximum capacity and efficiency;

 j. register the fictitious name "Cottman Transmission Center" in accordance with applicable local, state or provincial laws and operate the CENTER under the name COTTMAN and under no other name, and use and display the Cottman names and marks prominently in such manner as may from time to time be directed in writing by COTTMAN and not use or prominently display any other trade name, trademark, service mark or other designation during the term of this Agreement;

 k. permit COTTMAN during business hours to inspect the premises of the CENTER, confer with OPERATOR and OPERATOR's employees and customers, check inventories, methods, books and records, and perform any other inspection deemed by COTTMAN to be necessary to protect the standards of quality and uniformity of the SYSTEM and OPERATOR's performance under this Agreement;

 l. submit to COTTMAN uniform reports and financial statements in accordance with the procedure set forth in the Operator's Manual, and deliver a copy of OPERATOR's federal income tax return relating to the operations of the CENTER within thirty (30) days after such return is filed;

 m. maintain a system of bookkeeping and record keeping approved by COTTMAN, keep his books and records at the CENTER at all times and make them available during business hours to authorized representatives of COTTMAN for the purpose of verifying the accuracy of OPERATOR's reports. If such verification reveals that the gross receipts reported by OPERATOR to COTTMAN are more than two (2%) percent less than OPERATOR's actual gross receipts, OPERATOR shall reimburse COTTMAN for all expenses connected with such verification, including, but not limited to, reasonable accounting and legal fees, and without limitation to any other rights and remedies Cottman in its sole discretion may elect to pursue, OPERATOR shall pay to COTTMAN immediately any delinquent license fees, together with interest at the rate of eighteen percent (18%) [or the maximum rate of interest allowed by law if less than eighteen percent (18%)] per year, calculated from the date when such license fees should have been paid to the date of actual payment;

n. use only numerically consecutive repair orders provided by COTTMAN, for which COTTMAN may make a reasonable charge;

o. purchase all equipment, parts, and other supplies from COTTMAN or suppliers approved by COTTMAN, or from other suppliers whose parts and supplies conform to original equipment manufacturers' specifications or to the minimum standards of quality, performance and uniformity established from time to time by COTTMAN.

### 8. Continuing License Fees.

During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing license fee (the "continuing license fee") equal to seven and one-half (7 1/2%) percent of the gross business transacted by OPERATOR (as used in this section, the term "gross business" shall include all work completed and delivered to customers of the CENTER, exclusive of sales tax). The continuing license fee shall be paid weekly on each Tuesday based upon gross business transacted during the preceding calendar week. The continuing license fee shall be remitted together with a report showing the computation thereof upon forms provided by COTTMAN.

### 9. Advertising.

a. During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing advertising fee (the "continuing advertising fee") in the amount of Six hundred five dollars ($605.00) per week or such other adjusted amount as may be determined from time to time pursuant to Section 9.d. of this agreement payable at the same time and in the same manner as set forth in Section 8 of this Agreement.

b. The continuing advertising fee shall not be used for general operating expenses of COTTMAN, but shall be used and expended for media costs, commissions, fees, production costs, and other costs of all advertising which is published, broadcast, displayed, or otherwise disseminated either during the calendar year within which such continuing advertising fee is received by COTTMAN or during the immediately succeeding calendar year. COTTMAN may, in its sole discretion, suspend the placement of advertising for OPERATOR if any payments due COTTMAN under this Agreement are not paid the date upon which the payments are due. The suspension in advertising may continue until OPERATOR has paid current all monies owed COTTMAN. OPERATOR is not relieved of any obligation to make continuing advertising fee payments during the term of any suspension.

c. All decisions from time to time regarding whether to utilize national, regional, or local advertising, or some combination thereof, and all decisions regarding selecting of the particular media and advertising content, shall be within the sole discretion of COTTMAN and such agencies or others as it may appoint, provided however, that except for those amounts utilized for national advertising, all monies actually received from OPERATOR shall be spent for the local or regional market area of the CENTER.

d. The continuing advertising fee may be adjusted from time to time either nationally or by region or market area in Cottman's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) in any calendar year, and provided further that no adjustment shall be deemed retroactive to any prior year.

e. Nothing herein shall be deemed to prohibit OPERATOR from engaging in any advertising or promotion of his CENTER or business, in addition to the advertising or promotion paid for by COTTMAN, provided such advertising or promotion shall be at the sole cost of OPERATOR and without deduction or credit against any fees or other monies owed by OPERATOR to COTTMAN, and shall be subject to the provisions of section 9.f. of this Agreement.

f. OPERATOR shall not use, display, publish, broadcast, or in any manner disseminate any advertising or promotional material unless the same has been first approved in writing by COTTMAN. In the event that COTTMAN from time to time furnishes to OPERATOR any advertising, promotional or informational materials to be used, displayed, or distributed in or about CENTER, OPERATOR agrees to follow the instructions of COTTMAN in connection therewith.

a. OPERATOR shall purchase and at all times during the term of this Agreement shall maintain in full force and effect policies of insurance as follows:

i. Workmen's Compensation insurance, in amounts prescribed by law;

ii. insurance against all types of public liability including employer's liability insurance, liability insurance under either a comprehensive general liability policy or an occurrence basis or a garage liability policy, with bodily injury and property damage liability insurance, products liability or completed operations liability insurance, automobile liability insurance, including owned and non-owned hired cars, trucks, trailers and other motor vehicles, and customer automobile liability insurance;

iii. such additional insurance as may be required by the terms of any lease for the premises of the CENTER.

b. All policies of insurance required under this section shall be in form and in such amounts as COTTMAN shall reasonably determine with companies reasonably satisfactory to COTTMAN and shall protect, as named insureds, OPERATOR, COTTMAN and any other party designated by COTTMAN. All such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured. OPERATOR shall furnish COTTMAN, any other named insured, and all other persons designated by COTTMAN, certificates issued by each of OPERATOR's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty (30) days prior written notice from the insurer to each certificate holder. New certificates evidencing renewal of such insurance shall be furnished at least thirty (30) days prior to the date of expiration of each such policy. Within five (5) days of any request by COTTMAN, OPERATOR shall deliver the original of all such insurance policies to COTTMAN for examination.

c. If OPERATOR fails to obtain or maintain any insurance policy containing all the coverages, clauses and provisions required under this section, COTTMAN may, at its election, obtain and maintain said insurance for and in the name of OPERATOR. Within fifteen (15) days of any written request of COTTMAN, OPERATOR shall furnish all information necessary to obtain and maintain such insurance and shall pay all costs thereof.

11. Cottman Names and Marks and Trade Secrets.

a. OPERATOR hereby acknowledges the validity of the Cottman names and marks and that COTTMAN is the owner of all right, title and interest therein. OPERATOR agrees that he will use the COTTMAN names and marks in full compliance with specifications prescribed from time to time by COTTMAN and that all such usage and the good will established thereby shall inure to the exclusive benefit of COTTMAN.

b. OPERATOR represents and warrants that:

i. he will not contest, directly or indirectly, COTTMAN's ownership, title, right or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or contest COTTMAN's sole right to register, to use, and to license others to use such COTTMAN names and marks, trade secrets, methods, procedures and techniques and any other mark or name which incorporates the word "Cottman";

ii. with the exception of the use of the names and marks in the manner expressly specified and authorized under this Agreement and the registration of a fictitious name solely in connection with the operation of the CENTER, he will not use or register or attempt to use or register in OPERATOR's name or in the name of any other person or entity any name or mark, corporate name or any designation of any kind utilizing the COTTMAN names and marks, or any other materials used in the SYSTEM; and

iii. he will not disclose to any person or entity except in the ordinary course of business, any data or information contained in the Operator's Manual and he will keep and maintain such data and information and other materials furnished to OPERATOR by COTTMAN as trade secrets.

12. Protection of SYSTEM.

If OPERATOR learns of any actual or threatened infringement or piracy of the Cottman names and marks, trade secrets, methods, procedures or techniques used in the SYSTEM (the "Infringement") or of any infringement or piracy claim made against OPERATOR by a party other than COTTMAN ("Third Party Claim"), OPERATOR shall immediately notify COTTMAN in writing of the Infringement or Third Party Claim. COTTMAN shall in the exercise of its sole discretion determine what action, if any, to take with respect to the foregoing and shall bear the expense of any such action. OPERATOR agrees to be named party and to give his full cooperation in such action if so requested by COTTMAN. If OPERATOR is named as a party in any legal proceeding brought by a party other than COTTMAN for infringement of trade names, trademarks, service marks, copyrights or trade secrets, based upon OPERATOR's use of the Cottman names and marks, any such proceeding shall be defended in the name of OPERATOR by and at the expense of COTTMAN.

13. Customer Warranties.

OPERATOR recognizes that it is in the mutual best interest of OPERATOR and other operators participating in the SYSTEM for COTTMAN to establish uniform guarantees and warranties for labor and parts throughout the SYSTEM. OPERATOR therefore agrees to offer customers of the CENTER such guarantees and warranties as may from time to time be prescribed by COTTMAN, and no others, and to honor customer complaints made within the applicable guarantee or warranty period arising from work performed at any other CENTER. OPERATOR acknowledges that such guarantees and warranties are made to the customer by OPERATOR and not by COTTMAN, and that COTTMAN shall not be responsible for reimbursing any CENTER for work performed by any other CENTER. OPERATOR shall be entitled to be reimbursed by the operator of the CENTER which originally guaranteed or warranted the work for the cost of any automotive supplies, accessories, replacement parts and labor performed in satisfaction of such guarantee or warranty. OPERATOR shall fully comply with all of the policies and procedures concerning intercenter warranties as set forth from time to time in the Operator's Manual, as referred to in section 6 of this Agreement.

14. Telephone Service.

OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

15. Signs.

OPERATOR shall erect outside and inside signs of such size and construction as directed by COTTMAN. No other signs may be erected or used. The outside signs shall be leased from COTTMAN for the term of this Agreement pursuant to terms and provisions as set forth on a separate Lease Agreement attached hereto as Appendix B or may be leased or purchased from any other supplier upon written approval by COTTMAN. In the event OPERATOR purchases any sign from COTTMAN or leases or purchases any sign from a supplier other than COTTMAN, OPERATOR acknowledges and agrees that COTTMAN shall have exclusive control of the use and display of all sign faces bearing the Cottman name or marks.

16. Restrictions on Change of Ownership.

a. All rights and interests of OPERATOR arising ~~from this Agreement~~ are personal to OPERATOR and except as otherwise provided in this section 16, OPERATOR shall not, without COTTMAN's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the license granted hereby, or in the lease for the premises at which the CENTER is located, and any purported sale, assignment, transfer or encumbrances shall be null and void.

b. OPERATOR may assign this Agreement to a corporation in which OPERATOR owns a majority of the voting control and equity, provided that:

OPERATOR actively manages the corporation and continues to devote his best efforts and full and exclusive time to the day-to-day operation and development of the license and the business of the CENTER; and

ii. the corporation is newly organized and its activities are confined exclusively to acting as a COTTMAN licensee under this Agreement; and

iii. the corporation executes a document in such form as shall be approved by COTTMAN in which it agrees to become a party to and to be bound by all the provisions of this License Agreement to the same extent as if it were named as the OPERATOR herein; and

iv. OPERATOR remains personally liable in all respects under this Agreement and OPERATOR and all officers, directors and stockholders of the corporation execute in form approved by COTTMAN a personal guaranty and agreement not to further transfer the stock; and

v. all stock certificates representing shares in the corporation bear the following legend:

The shares of stock represented by this certificate are subject to the terms and conditions set forth in a License Agreement dated *July 14*, 19*99*, between

David Faulkner and Robyn Faulkner

(OPERATOR) and Cottman Transmission Systems, Inc., copies of which are on file in the principal offices of OPERATOR and COTTMAN.

c. Anything herein to the contrary notwithstanding:

i. If OPERATOR (or if OPERATOR dies or becomes incapacitated, his personal representative) desires to sell his CENTER and receives from a fully disclosed third person a bona fide written offer to purchase his CENTER, license and interests under this Agreement or if OPERATOR desires to sell the stock of any corporation to which they have been transferred pursuant hereto, he shall give COTTMAN written notice and a copy of such offer and COTTMAN shall have the option, exercisable within thirty (30) days after receipt of such notice, to purchase such CENTER, license and interests in this Agreement or corporate stock, including the lease, on the same terms and conditions as offered by said third person provided that COTTMAN may substitute equivalent cash for any form of payment offered by said third person. If COTTMAN does not exercise its option and if such third person is of good character, reputation and financial condition and acceptable to COTTMAN, OPERATOR shall have the right for a period of ninety (90) days after the expiration of COTTMAN's option period to accept the offer and to assign OPERATOR's interests to such third person (subject to the provisions of subsection d of this section);

ii. if OPERATOR dies and his personal representative does not desire to sell his CENTER, and if under controlling local law the deceased OPERATOR's interests in the CENTER, and this Agreement are distributable to heirs or legatees who are members of his immediate family and who otherwise would qualify as assignees under the terms of this section, then such attempted assignment by operation of law or will shall not be deemed in violation hereof, provided such heirs or legatees accept the conditions imposed in this section on otherwise permitted assignees.

d. Consent to an assignment, sale or transfer otherwise permitted or permissible as reasonable may be refused by COTTMAN unless:

i. all obligations of OPERATOR in connection with the CENTER are assumed by assignee, buyer or transferee;

ii. all prior ascertained or liquidated debts of OPERATOR in connection with the CENTER are paid concurrently with the assignment, sale or transfer;

iii. OPERATOR is not in default hereunder;

iv. assignee, buyer or transferee, prior to the effective date of the assignment, sale, or transfer, satisfactorily completes the Cottman training program required of new operators;

v. assignee, buyer or transferee executes COTTMAN's then current standard License Agreement for a full term as provided therein;

vi. OPERATOR, assignee, buyer or transferee, prior to the effectiveness of the assignment, sale or transfer, pays to COTTMAN its then current training fee and a reasonable amount determined by COTTMAN to reimburse COTTMAN for its reasonable legal and accounting fees, credit and investigation charges and expenses incurred as a consequence of such assignment, sale or transfer; and

vii. OPERATOR and all officers, directors and shareholders of a corporate OPERATOR shall execute a general release under seal in favor of COTTMAN.

17. Relationship of the Parties; Indemnification.

a. The relationship between COTTMAN and OPERATOR is strictly that of a licensor and licensee and OPERATOR is an independent contractor. This Agreement does not create a joint venture, partnership, or agency and any act or omission of either party shall not bind or obligate the other except as expressly set forth in this Agreement.

b. OPERATOR recognizes that COTTMAN has entered into this Agreement in reliance upon and in recognition of the fact that OPERATOR will have full responsibility for the management and operation of the CENTER and that the amount of profit or loss resulting from the operation of the CENTER will be directly attributable to the performance of OPERATOR.

c. OPERATOR shall protect, indemnify and save COTTMAN harmless against any and all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses, and liabilities of any kind or nature arising directly or indirectly out of or in connection with the operation of the CENTER.

d. Except as expressly granted herein, OPERATOR recognizes that nothing contained in this Agreement shall be construed as giving to OPERATOR or to any other person or entity, any right or interest in the Cottman names and marks, trade secrets, methods, procedures or techniques developed by COTTMAN and used in the SYSTEM. Further, nothing contained herein shall be construed as limiting COTTMAN's right, title or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or COTTMAN's sole and exclusive right to register, to use and to license others to use such names and marks, trade secrets, methods, procedures and techniques.

e. In all public records and in his relationship with third parties as well as on letterheads and business forms, OPERATOR shall indicate his independent ownership of the CENTER and that he is a licensee of COTTMAN. OPERATOR agrees to conspicuously display both inside and outside the CENTER a notification that he is solely an independent licensee of COTTMAN.

18. Termination.

a. This paragraph a. shall apply only to Elite License Agreements. COTTMAN or OPERATOR may terminate this Agreement by giving thirty (30) days written notice to the other, if, within one (1) year from the date hereof, OPERATOR fails to open his CENTER, as set forth in either Sections 1.c. or 3.a. of this Agreement.

a. This paragraph a. shall apply to all License Agreements. COTTMAN, at is option, and without prejudice to any other rights or remedies which it may have hereunder, at law or in equity may terminate this Agreement:

i. if OPERATOR fails to complete the initial training program to COTTMAN's satisfaction, this Agreement will be terminated immediately; or

ii. immediately and without prior notice if in the sole judgment of COTTMAN, OPERATOR breaches subsection 7.a. or 7.b. of this Agreement; or

iii. if OPERATOR is delinquent in the payment of the continuing license fee or the continuing advertising fee, or any other payment due to COTTMAN and if the default is not cured within ten (10) days after COTTMAN gives notice in writing to cure such default;

iv. immediately and without prior notice if OPERATOR shall be adjudicated a bankrupt; if a receiver (permanent or temporary) of his property, or any part thereof is appointed by a court of competent authority; if he makes a general assignment for the benefit of his creditors; if execution is levied against his business or property; if OPERATOR abandons the CENTER or ceases its operation for a period of more than five (5) consecutive regular business days;

v. if OPERATOR defaults in the performance of any of the other terms, conditions and obligations of this Agreement or of his lease for the premises at which the CENTER is located and if the default is not cured within thirty (30) days after COTTMAN gives notice to OPERATOR in writing to cure such default.

b. Notwithstanding anything contained herein to the contrary, COTTMAN shall not be required to give OPERATOR notice in the case of a default hereunder or to afford OPERATOR any period within which to cure the same and COTTMAN may terminate this Agreement immediately and without prior notice on any default if, within twelve (12) months immediately preceding the occurrence of such default, OPERATOR has been given notice of any default hereunder on two (2) prior occasions, whether or not such default has been cured.

c. If there are now, or hereafter shall be, other license agreements in effect between COTTMAN and OPERATOR, a default by OPERATOR under the terms and conditions of this or any other of such agreements, shall at the option of COTTMAN, constitute a default under all such agreements.

19. Effect of Termination.

Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of its current term by virtue of OPERATOR's failure to renew the same as provided in section 2 hereof (sometimes herein "Expiration") OPERATOR shall cease to be a COTTMAN licensee, and

a. OPERATOR agrees:

i. promptly to pay COTTMAN all amounts owing from OPERATOR to COTTMAN;

ii. immediately to discontinue the use of all Cottman names and marks, signs, structures, forms of advertising, telephone listings and service, manuals, and all materials and products of any kind which are identified or associated with the SYSTEM or COTTMAN and to return all such materials and products to COTTMAN;

iii. thereafter to make no representations or statements that OPERATOR is or ever was in any way approved, endorsed or licensed by COTTMAN or associated or identified with COTTMAN or the SYSTEM in any manner whatsoever or that OPERATOR is a former COTTMAN OPERATOR; provided, however, OPERATOR shall honor all customer complaints made within the applicable guarantee or warranty period arising from work performed at the Center;

iv. immediately to take all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Cottman names and marks in order to effectuate the removal of the Cottman names and marks from such registration or filing.

b. COTTMAN shall have the option to purchase all of OPERATOR's right, title and interest in the CENTER and all equipment contained therein. If COTTMAN intends to exercise its option, COTTMAN shall notify OPERATOR of such intention at the time of termination or in the case of Expiration, within ten (10) days prior to the expiration of the current term of this Agreement. The full purchase price of the CENTER shall be:

i. in the case of Expiration, the fair market value of the equipment and parts then located at the CENTER less all outstanding liabilities of the CENTER;

straight line basis, less all outstanding liabilities of the CENTER. COTTMAN shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the CENTER and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, COTTMAN shall apply the purchase price in such manner as COTTMAN, in its own discretion, shall determine. In no event, however, shall COTTMAN become liable for any of the debts and liabilities of OPERATOR or the CENTER and OPERATOR shall remain responsible for all outstanding debts and liabilities of the CENTER which remain unsatisfied subsequent to the distribution by COTTMAN of the purchase price funds;

  iii. "Fair Market Value" as used in this section 19, shall be determined by an appraisal from an independent third party acceptable to COTTMAN. The costs of such appraisal shall be borne equally by COTTMAN and OPERATOR.

  c. If, within five (5) days after termination, OPERATOR fails to remove all displays of the COTTMAN names and marks and any other materials of any kind from the CENTER which are identified or associated with the SYSTEM or COTTMAN, COTTMAN may enter the CENTER or premises to effect such removal. In such event, COTTMAN shall not have liability to OPERATOR therefor nor be accountable or required to pay for such displays or materials.

  d. If, within three (3) days after termination OPERATOR has not taken all steps necessary to amend, transfer or terminate telephone listings and service, any registration or filing of any fictitious name or any other registration or filing containing the COTTMAN names and marks, OPERATOR hereby irrevocably nominates, constitutes and appoints COTTMAN or any Prothonotary, Clerk of Court, or Attorney of any Court of Record as his true and lawful attorney for him and in his name and on his behalf to take all such action as may be necessary to amend, transfer or terminate all such telephone listings and service, registrations and filings of such fictitious name or any other registration or filing containing the COTTMAN names and marks, without liability to OPERATOR for so doing. In the event any action is required to be taken by or on behalf of COTTMAN pursuant to this subsection 19.d., the telephone company and all listing agencies, without liability to OPERATOR, may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

  e. Termination of this Agreement shall not affect, modify or discharge any claims, rights, causes of action or remedies, which COTTMAN may have against OPERATOR, whether under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

  f. OPERATOR hereby irrevocably authorizes COTTMAN to enter upon and take possession of the CENTER and to take in the name of OPERATOR, all other actions necessary to effect the provisions of this section, and any such entry or other action shall not be deemed a trespass or other illegal act, and COTTMAN shall not be liable in any manner to OPERATOR for so doing.

  20. Covenant Not to Compete.

  OPERATOR acknowledges that as a participant in the SYSTEM, OPERATOR will receive confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by COTTMAN. Therefore, to protect the SYSTEM and COTTMAN and to induce COTTMAN to grant to OPERATOR the license as set forth herein, OPERATOR represents and warrants:

  a. Except for the business contemplated by this Agreement, during its term OPERATOR shall not engage in any business the same as, similar to, or in competition with any CENTER, COTTMAN or the SYSTEM.

  b. For a period of two (2) years after the termination of this Agreement for any reason, OPERATOR shall not:

  i. within a radius of ten (10) miles of OPERATOR's former CENTER and three (3) miles of any other CENTER in operation at the time of termination or any CENTER that has commenced operation during said two (2) year period, begin or engage in any business the same as, similar to or in competition with such CENTER; or

ii. within the territorial boundaries of the United States, Canada, Puerto Rico, Australia, and the Virgin Islands, as a licensor, franchisor, or similar organization, engage in any business, the same, similar to, or in competition with, COTTMAN or the SYSTEM.

c. As used in subsections 20.a. and 20.b. above:

i. "engage in" shall include, but not be limited to, activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, lessor, principal, broker, agent, employee, consultant, lender or otherwise; and

ii. "in competition with" shall include, but not be limited to:

(a) the request of any present or future supplier, customer or operator of a CENTER to curtail or cancel its business relationship with any CENTER, COTTMAN or the SYSTEM,

(b) the disclosure of the identity of any past, present or future customer, supplier or operator of any CENTER, and

(c) the solicitation, canvassing or the authorization of any other person to solicit or canvass any past, present or future customer, supplier or operator of a CENTER.

As used in this subsection 20.c.ii., "future supplier, customer or operator" shall mean a supplier, customer, or operator who will have had a business relationship with a CENTER, COTTMAN or the SYSTEM during the term of this Agreement or during a period of one (1) year following the termination of this Agreement.

d. OPERATOR shall not at any time, directly or indirectly, divulge, furnish or make accessible to any person or entity financial or confidential information, trade secrets, methods, procedures, or techniques of any kind relating to any aspect of the operations of the CENTER, COTTMAN or the SYSTEM.

e. OPERATOR acknowledges that in view of the nature of the SYSTEM and the business of COTTMAN, the restrictions contained in this section 20 are reasonable and necessary to protect the legitimate interests of the SYSTEM and COTTMAN and that any violation of such restrictions will result in irreparable injury to the SYSTEM or COTTMAN. Therefore, OPERATOR acknowledges that, in the event of such violation, COTTMAN shall be entitled to preliminary and permanent injunctive relief and damages as well as an equitable accounting of all earnings, profits, and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which COTTMAN shall be entitled, and the arbitration provisions of section 21 shall not apply to any equitable proceeding seeking enforcement of the provisions of this section 20. If OPERATOR violates any restriction contained in this section 20, and it is necessary for COTTMAN to seek equitable relief, the restrictions contained herein shall remain in effect until two (2) years after such relief is granted.

f. OPERATOR agrees that the provisions of this covenant not to compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restriction contained in this section 20 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

21. Arbitration.

Any controversy or claim arising out of or relating to this Agreement may, by agreement, be settled by arbitration in the City of Philadelphia, Pennsylvania by a panel of three (3) arbitrators (the "arbitrators") in accordance with the rules of the American Arbitration Association then in effect. The decision of the Arbitrators shall be final and binding on the parties and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction. Each party shall be responsible for the payment of his or its legal expenses and the fees and expenses of arbitration except that the Arbitrators shall be paid by the losing party. The Arbitrators shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification.

a. In addition to the payment of the continuing license fee set forth in section 8 hereof, and the continuing advertising fee in section 9 hereof, OPERATOR agrees to pay all costs incurred by COTTMAN in collecting such fees and all other payments due hereunder and incurred in enforcing the provisions of this Agreement, including but not limited to, the cost of all telephone calls, telegrams, travel, legal expenses and correspondence.

b. OPERATOR shall pay COTTMAN a late charge upon all amounts due and owing to COTTMAN in an amount equal to one and one-half percent (1-1/2%) of the average unpaid balance per month. If the late charge violates any usury or similar law, then the late charge will instead be the maximum amount allowed under applicable law. In addition, for each gross weekly business report not received by COTTMAN within two (2) weeks from the date on which it was due, OPERATOR shall pay COTTMAN a late charge of ten dollars ($10.00) per report, per week.

23. Waiver.

Waiver by COTTMAN or OPERATOR of any violation or default hereunder shall not alter or impair either party's right with respect to any subsequent violation or default nor shall any delay or omission on the part of either party to exercise any right arising from such violation or default alter or impair such party's rights as to the same or any future violation or default. An acceptance by COTTMAN of any payment from the OPERATOR after the date on which such payment is due shall not operate as a waiver of OPERATOR's default or violation hereunder nor alter or impair COTTMAN's rights with respect to such violation or default.

24. Successors.

Except as otherwise specifically set forth in this Agreement, this Agreement shall inure to and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns. COTTMAN shall have the right to assign its rights and interests under this Agreement, provided that the assignee shall agree in writing to assume all obligations undertaken by COTTMAN hereunder. Such assignment shall discharge COTTMAN from all other obligations as set forth in this Agreement.

25. Notice.

Every notice under this Agreement shall be in writing and delivered personally or by registered or certified mail, return receipt requested, addressed to the party to whom it is directed at the address hereinabove set forth or at such other address as one party shall provide to the other in writing. All notices shall be effective when deposited, postage prepaid, in the mail and the return receipt shall be conclusive evidence thereof.

26. Risk of Operations.

OPERATOR recognizes the uncertainties inherent in all business ventures. OPERATOR agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to OPERATOR, either by COTTMAN or anyone acting on its behalf or purporting to represent it, including, but not limited to, the prospects for successful operations, the level of business or profits that OPERATOR might reasonably expect, the desirability, profitability or expected traffic volume or profit of the CENTER (whether or not COTTMAN assisted OPERATOR in the selection of the location of the CENTER), the costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the CENTER or as to the quality of any products or services to be sold by OPERATOR to its customers hereunder. OPERATOR acknowledges that all such factors are necessarily dependent upon variables beyond COTTMAN's control, including without limitation, the ability, motivation and amount and quality of effort expended by OPERATOR.

27. Severability.

If any portion of any section of this Agreement shall conflict with the applicable provisions of Federal, State or local law, the conflicting portion shall be construed in accordance with the specific provisions of the applicable law, and the remaining portion of said section, as well as the remainder of this Agreement, shall remain in full force and effect.

28. Jurisdiction, Venue and Controlling Law.

This Agreement and all related agreements have been entered into in the Commonwealth of Pennsylvania and any matter whatsoever which arises out of or is connected in any way with the Agreement or the franchise shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

a. With respect to any legal proceedings arising out of or connected in any way to this Agreement or the franchise, OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought only in such courts and the parties further agree that the mailing (by certified mail, return receipt requested) to such party's last known address of any process shall constitute lawful and valid process.

b. In the event OPERATOR institutes legal proceedings in any court other than those specified, he shall assume all of COTTMAN's costs in connection therewith, including but not limited to, reasonable counsel fees.

29. JURY WAIVER

OPERATOR AND COTTMAN HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

30. Entire Agreement.

This instrument contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations or warranties, either oral or written, except those contained in this Agreement. Except as set forth in Section 6.c., this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

WITNESS:                                          COTTMAN TRANSMISSION SYSTEMS, INC.

_____          BY: _____ (SEAL)
                                                  Todd P. Leff, President

WITNESS:                                          OPERATOR:

_____          _____ (SEAL)
                                                  David Faulkner

WITNESS:                                          OPERATOR:

_____          _____ (SEAL)
                                                  Robyn Faulkner

WITNESS:                                          OPERATOR:

_____          _____ (SEAL)

I:\USERS\EILEEN\COMPLIAN\LICAGR\NEW\UNILAD21.WPD        15



# TRANSFER OF LICENSE TO A CORPORATION

The undersigned, an officer, director and owner of a majority of the issued and outstanding voting stock of the corporation set forth below and OPERATOR of a COTTMAN Transmission Center under a License Agreement executed on the date set forth below between himself and Cottman Transmission Systems, Inc. (COTTMAN) granting him a license to operate the CENTER at the location set forth below and the other undersigned directors, officers and shareholders of the corporation, who together with OPERATOR constitute all of the shareholders of the corporation, in order to induce COTTMAN to consent to the assignment of the License Agreement to the corporation in accordance with the provisions of Section 16 of the License Agreement agree as follows:

1. The undersigned OPERATOR shall remain personally liable in all respects under the License Agreement and all the other undersigned officers, directors and stockholders of the corporation, intending to be legally bound hereby, agree jointly and severally to be personally bound by the provisions of the License Agreement, specifically including the restrictive covenant contained in Section 20 hereof, to the same extent as if each of them were the OPERATOR as set forth in the License Agreement and they jointly and severally personally guarantee all of the OPERATOR's obligations set forth in said Agreement.

2. The undersigned agree not to transfer any stock in the corporation without the prior written approval of LICENSOR and agree that all stock certificates representing shares in the Corporation shall bear the following legend:

The shares of stock represented by this certificate are
subject to terms and conditions set forth in a License
Agreement dated *July 14, 1989*, between

David Faulkner and Robyn Faulkner

(OPERATOR) and Cottman Transmission Systems, Inc.
copies of which are on file in the principal offices of
OPERATOR and Cottman.

3. David Faulkner and Robyn Faulkner shall devote their best efforts and full and exclusive time to the day-to-day operation and development of the License and the business of the Center.

4. *TOOG & DEENIE INC.* hereby agrees to become a party to and to be bound by all the provisions of the License Agreement executed on the date set forth below between OPERATOR and COTTMAN to the same extent as if it were named as the OPERATOR therein.

Date of License Agreement: _July 14, 1999_____

Location of Center: Ft. Worth, Texas _____

WITNESS:

_____        _____(Seal)
                                 David Faulkner

WITNESS:

_____        _____(Seal)
                                 Robyn Faulkner

WITNESS:

_____        _____(Seal)


Attest:

_____        By:_____(Seal)
        Secretary                        President

                                 By:_____(Seal)
                                       Vice President

    (Corporate Seal)             By:_____(Seal)
                                         Secretary

                                 By:_____(Seal)
                                         Treasurer


In consideration of the execution of the above agreement, Cottman Transmission Systems, Inc. hereby consents to the above assignment on this  20th  day of  July  ~~19~~ 2001 .

COTTMAN TRANSMISSION SYSTEMS, INC.

By:_____(SEAL)
      Todd P. Leff, President

# Cottman®

## TRANSMISSION SYSTEMS, LLC

*Executive Offices* 240 New York Drive • Fort Washington, PA 19034
215-643-5885 • Fax: 215-643-2519
www.cottman.com

May 3, 2002

VIA CERTIFIED MAIL - RRR and REGULAR MAIL

Mr. David Faulkner
Mrs. Robyn Faulkner
Toogs & Deenie, Inc.
Cottman Transmission Center
3611 E. Highway 377
Granbury, TX 76049

Re:   Breach of License Agreement
      Cottman Transmission Center
      3611 E. Highway 377
      Granbury, TX 76049

Dear Mr. and Mrs. Faulkner:

This letter shall serve as Formal Notice of the following breaches of your License Agreement
dated July 14, 1999, with Cottman Transmission Systems, LLC

1.      Failure to pay continuing license fees in the amount of Thirty four dollars and
eight one cents ($34.81) as of April 27, 2002 on gross sales in violation of Section 8 of your
License Agreement.

2.      Failure to pay continuing advertising fees in the amount of Seven thousand seven
hundred one dollars. ($7,701.00) as of April 27, 2002 on gross sales in violation of Section 9 of
your License Agreement.

3.      Failure to pay sign rent in the amount of Nine dollars and thirty eight cents
($9.38) as of April 27, 2002.

In addition to the above violations, you have failed to submit the weekly business report for the
week of 4/27/02. The projected fees based on your verbal gross sales owed for the unreported
weeks are as follows:

        a.  License Fees        -      $ 450.00

        b.  Advertising Fees    -      $ 675.00

Returned EFTs, collection expenses, penalties, late charges, and other miscellaneous items have also been assessed in the amount of One thousand three hundred sixty one dollars and ninety nine cents ($1,361.99)

Therefore, demand is hereby made that payment in the amount of Ten thousand two hundred thirty two dollars and eighteen cents ($10,232.18) be made in full to this office within ten (10) days of this letter.

Under the terms of the License Agreement, Cottman is giving you ten (10) days within which to cure the breaches noted above. If you fail to cure said breaches and fully comply with all terms of your License Agreement within the time period provided, Cottman may exercise its right to terminate your License Agreement without further warning. Further, this notice is without prejudice to any rights Cottman may have to effect an immediate termination based on other breaches of the License Agreement.

Sincerely yours,

COTTMAN TRANSMISSION SYSTEMS, LLC

William B. Jameson
General Counsel

WBJ/crs

cc:     Todd Leff
        John Colarossi
        Sandy Sloyer
        Mike Dacko

**EXHIBIT C**

*TRANSMISSION SYSTEMS, LLC*

*Executive Offices*  240 New York Drive • Fort Washington, PA 19034
215-643-5885 • Fax: 215-643-2519
www.cottman.com

May 9, 2002

**VIA FAX (214) 745-2834**
**AND U.S. MAIL**

Carrie Martin, Business Call Center Manager
SouthWestern Bell
208 S. Akard Street
Dallas, TX 75202

Re:  Telephone Numbers - (817) 579-8664; (817) 573-0275; (817) 573-0413; (817) 579-7033
Service Address – 3611 E. Highway 377, Granbury, TX 76234

Dear Ms. Martin:

I am associate counsel for Cottman Transmission Systems, LLC ("Cottman Systems") and Cottman Transmission Communications Corp. ("Cottman Communications"). I am writing to follow up our telephone conversation of today concerning the above-referenced telephone accounts. As discussed, these telephone accounts were previously in the name of "Cottman Transmission Communications Corporation d/b/a Cottman Transmission Center" and serviced by Allegiance Telecom. These telephone accounts have now been hijacked away from Cottman Transmission Communications Corp., and are now serviced by SouthWestern Bell.

Background

Cottman Systems is a national franchisor of transmission repair centers. Each Cottman Transmission Center is individually owned and operated by a franchisee, and the name "Cottman Transmission Center" is used by each franchisee under license from Cottman Systems.

The telephone accounts for each Center, including the Granbury Center, are owned by Cottman Systems and held in the name of Cottman Transmission Communications Corp. d/b/a Cottman Transmission Center. Cottman Systems and Cottman Communications place advertising for the Cottman Transmission Centers linking the telephone numbers for each Center with the trademarks of Cottman Systems.

The franchisees do not have authorization to make changes to the telephone accounts or to switch or initiate service. Cottman Systems has the right to initiate, change, and transfer service on the telephone accounts. For example, if a franchisee is in violation of its license agreement with Cottman Systems, Cottman Systems, may direct the telephone company to redirect incoming calls

accordance with its license agreement.

## Granbury Center

The franchisees of the Granbury, Texas Center are David Faulkner and Robyn Faulkner. The above identified telephone numbers for the Center were in the name of "Cottman Transmission Communications Corporation d/b/a Cottman Transmission Center" and serviced by Allegiance Telecom. Without the knowledge or authorization of Cottman Systems or Cottman Communications, the Faulkners contacted SouthWestern Bell to have these numbers transferred from Allegiance Telecom to SouthWestern Bell and to restrict access to these accounts. SouthWestern Bell, in turn notified Allegiance Telecom that it had authorization to transfer the accounts to SouthWestern Bell and such a transfer was completed.

Subsequently, Cottman Communications learned of this unauthorized transfer and attempted to assert control over its telephone accounts. These attempts have been unsuccessful.

I have enclosed the relevant portion of the license agreement between Cottman Systems and the Faulkners. Section 14 explicitly states that the telephone numbers are the property of Cottman Systems.

It is hereby demanded that these telephone numbers be transferred to the account of "Cottman Transmission Communication Corp. d/b/a Cottman Transmission Center", with the service address as indicated above. Access to the telephone accounts is to be limited to key representatives of Cottman Transmission Communication Corp. – Todd Leff, Harry Kalish, Christy Wilson and Trancy Smith – and protected by the password "RADIO".

Please be advised that Cottman Systems and Cottman Communications are currently involved in litigation against Allegiance Telecom involving this and other matters. I will not hesitate to bring suit against SouthWestern Bell. However, I hope this correspondence and the enclosed documents are sufficient for SouthWestern Bell to take the requested corrective action.

If you are unable to comply within your department, please forward a copy of this letter to your legal department. I look forward to your anticipated cooperation.

Sincerely,

Alan L. Poliner
Associate Counsel


Enclosure

Cc:   Will Jameson
      Tracy Smith

TRANSMISSION SYSTEMS, LLC

*Executive Offices* 240 New York Drive • Fort Washington, PA 19034
215-643-5885 • Fax: 215-643-2519
www.cottman.com

May 28, 2002
**VIA FAX (214) 464-2250**
**AND U.S. MAIL**
Timothy Whitley, Esq.
SouthWestern Bell
208 S. Akard Street
1 SBC Plaza, Suite 2950
Dallas, TX 75202

Re:   Telephone Numbers - (817) 579-8664; (817) 573-0275; (817) 573-0413; (817) 579-7033
Service Address – 3611 E. Highway 377, Granbury, TX 76234

Dear Mr. Whitley:

I am writing to follow up our telephone conversation of today concerning the above-referenced telephone numbers. I am associate counsel for Cottman Transmission Systems, LLC and Cottman Transmission Communications Corp. The above-referenced telephone accounts were previously in the name of "Cottman Transmission Communications Corporation d/b/a Cottman Transmission Center" and serviced by Allegiance Telecom. These telephone accounts have now been hijacked away from Cottman Transmission Communications Corp. by the franchisees of the Granbury Cottman Center, and are now serviced by SouthWestern Bell.

I am enclosing a copy of my May 9, 2002 correspondence to Carrie Martin, a SouthWestern Bell Business Call Center Manager. This letter demonstrates that these telephone numbers belong to my client. Pursuant to my correspondence and conversations with Ms. Martin, she indicated that the telephone numbers would be transferred to Cottman Transmission Communications Corp.

Please be advised that if SouthWestern Bell voluntarily transfers these telephone numbers, Cottman Transmission Communications Corp. does not have any desire to switch to another local telephone company. If these numbers are not voluntarily transferred to Cottman Transmission Communications Corp., it is guaranteed that a lawsuit will be filed.

Once you review the facts, I trust that Southwestern Bell will comply with my client's request. If you need any additional information, please contact me.

Sincerely,

Alan L. Poliner
Associate Counsel
Cottman Transmission Systems, LLC
Cottman Transmission Communications Corp.

Enclosure

Cc:   Will Jameson

## TRANSMISSION
### SINCE 1962

☑ New   ☐ Conversion
☐ Elite

# License Agreement

AGREEMENT made *July 14*, 19*99*, between COTTMAN TRANSMISSION SYSTEMS .... 240 New York Drive, Fort Washington, Pennsylvania 19034 (hereinafter called "COTTMAN"), and

David Faulkner and Robyn Faulkner
7216 Pawnee Trail
Ft. Worth, TX 76135

(hereinafter called "OPERATOR")

As a result of extensive experience in the automotive transmission business, COTTMAN has developed and perfected certain methods, procedures and techniques of repairing, remanufacturing and servicing transmissions, and

COTTMAN has developed a system (hereinafter called the "SYSTEM") for conducting operations in the automotive transmission business which consists, in part, of the use of the Cottman name, Cottman's methods, procedures and techniques, and a network of Centers devoted exclusively to the repair of automotive transmissions (hereinafter called "CENTERS") which use the Cottman name and said methods, procedures and techniques; and

COTTMAN has created a substantial demand for its products and services by maintaining high standards of quality in its operations and in the operations of its licensed CENTERS and by extensive advertising; and

COTTMAN is actively engaged in promoting and expanding the reputation and good will of the name COTTMAN in connection with the automotive transmission business; and

In recognition of the value of participating in the SYSTEM, OPERATOR desires to acquire a license to operate a CENTER;

THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound, the parties agree as follows:

1. Grant of License.

   a. In consideration of the payment of the initial fees, as set forth in Appendix A attached hereto and made a part hereof, OPERATOR shall have the right, subject to the terms and conditions set forth in this Agreement, to a CENTER (hereinafter called "the CENTER"), under the Cottman name and under any other trade names, trademarks and logos (hereinafter called "Cottman names and marks") presently used, or which may hereafter be used

secrets, methods, procedures or techniques used in the SYSTEM (the "Infringement") or of any infringement or piracy claim made against OPERATOR by a party other than COTTMAN ("Third Party Claim"), OPERATOR shall immediately notify COTTMAN in writing of the Infringement or Third Party Claim. COTTMAN shall in the exercise of its sole discretion determine what action, if any, to take with respect to the foregoing and shall bear the expense of any such action. OPERATOR agrees to be named party and to give his full cooperation in such action if so requested by COTTMAN. If OPERATOR is named as a party in any legal proceeding brought by a party other than COTTMAN for infringement of trade names, trademarks, service marks, copyrights or trade secrets, based upon OPERATOR's use of the Cottman names and marks, any such proceeding shall be defended in the name of OPERATOR by and at the expense of COTTMAN.

### 13. Customer Warranties.

OPERATOR recognizes that it is in the mutual best interest of OPERATOR and other operators participating in the SYSTEM for COTTMAN to establish uniform guarantees and warranties for labor and parts throughout the SYSTEM. OPERATOR therefore agrees to offer customers of the CENTER such guarantees and warranties as may from time to time be prescribed by COTTMAN, and no others, and to honor customer complaints made within the applicable guarantee or warranty period arising from work performed at any other CENTER. OPERATOR acknowledges that such guarantees and warranties are made to the customer by OPERATOR and not by COTTMAN, and that COTTMAN shall not be responsible for reimbursing any CENTER for work performed by any other CENTER. OPERATOR shall be entitled to be reimbursed by the operator of the CENTER which originally guaranteed or warranted the work for the cost of any automotive supplies, accessories, replacement parts and labor performed in satisfaction of such guarantee or warranty. OPERATOR shall fully comply with all of the policies and procedures concerning intercenter warranties as set forth from time to time in the Operator's Manual, as referred to in section 6 of this Agreement.

### 14. Telephone Service.

OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

### 15. Signs.

OPERATOR shall erect outside and inside signs of such size and construction as directed by COTTMAN. No other signs may be erected or used. The outside signs shall be leased from COTTMAN for the term of this Agreement pursuant to terms and provisions as set forth on a separate Lease Agreement attached hereto as Appendix B or may be leased or purchased from any other supplier upon written approval by COTTMAN. In the event OPERATOR purchases any sign from COTTMAN or leases or purchases any sign from a supplier other than COTTMAN, OPERATOR acknowledges and agrees that COTTMAN shall have exclusive control of the use and display of all sign faces bearing the Cottman name or marks.

### 16. Restrictions on Change of Ownership.

a. All rights and interests of OPERATOR arising from this Agreement are personal to OPERATOR and except as otherwise provided in this section 16, OPERATOR shall not, without COTTMAN's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the license granted hereby, or in the lease for the premises at which the CENTER is located, and any purported sale, assignment, transfer or encumbrances shall be null and void.

b. OPERATOR may assign this Agreement to a corporation in which OPERATOR owns a majority of the voting control and equity, provided that:

any matter whatsoever which arises out of or is connected in any way with the Agreement or the franchise shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

a. With respect to any legal proceedings arising out of or connected in any way to this Agreement or the franchise, OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought only in such courts and the parties further agree that the mailing (by certified mail, return receipt requested) to such party's last known address of any process shall constitute lawful and valid process.

b. In the event OPERATOR institutes legal proceedings in any court other than those specified, he shall assume all of COTTMAN's costs in connection therewith, including but not limited to, reasonable counsel fees.

### 29. JURY WAIVER

OPERATOR AND COTTMAN HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

### 30. Entire Agreement.

This instrument contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations or warranties, either oral or written, except those contained in this Agreement. Except as set forth in Section 6.c., this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

WITNESS:                                                    COTTMAN TRANSMISSION SYSTEMS, INC.

_Eileen Y. Burke_

                                                            BY: _____ (SEAL)
                                                                Todd P. Leff, President

WITNESS:

_Laura Long_                                                OPERATOR:

                                                            _____ (SEAL)
                                                            David Faulkner

WITNESS:

_Laura Long_                                                OPERATOR:

                                                            _____ (SEAL)
                                                            Robyn Faulkner

WITNESS:                                                    OPERATOR:

_____                                   _____ (SEAL)

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|------|-------|----------|---------|-------|------|------|----|----|
| MAY-28 | 01:35 PM | 12144642250 | 4'02" | 7 | SEND | OK | 891 | |

|  | | | TOTAL : | 4M 2S | PAGES: | 7 | | |

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

# Cottman Transmission Systems, LLC

### 240 NEW YORK DRIVE
### FORT WASHINGTON, PA 19034
### TELEPHONE: (215) 643-5885
### FAX: (215) 643-2519

### LEGAL DEPARTMENT TELEFAX

### WILLIAM B. JAMESON, GENERAL COUNSEL
### ALAN L. POLINER, ASSOCIATE COUNSEL
### EILEEN J. BURKE, MARKETING AND LICENSING COORDINATOR
### LAURA S. LONG, LEGAL SECRETARY

TO:        Timothy Whitley, Esquire

FAX #      214-464-2250

# Cottman Transmission Systems, LLC

240 NEW YORK DRIVE
FORT WASHINGTON, PA 19034
TELEPHONE: (215) 643-5885
FAX: (215) 643-2519

## LEGAL DEPARTMENT TELEFAX

**WILLIAM B. JAMESON, GENERAL COUNSEL**
**ALAN L. POLINER, ASSOCIATE COUNSEL**
**EILEEN J. BURKE, MARKETING AND LICENSING COORDINATOR**
**LAURA S. LONG, LEGAL SECRETARY**

TO:        Timothy Whitley, Esquire

FAX #      214-464-2250

FROM:      Alan Poliner, Esquire

DATE:      May 28, 2002

RE:        Granbury, TX

You should receive 7 page(s), including this cover sheet. If you experience any problems with this transmission, please call (215) 643-5885.

2

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

| | | |
|---|---|---|
| COTTMAN TRANSMISSSION SYSTEMS, LLC | : | |
| and | : | |
| COTTMAN TRANSMISSION | : | |
| COMMUNICATIONS, CORP. | : | |
| Plaintiffs, | : | |
| v. | : | No. |
| DAVID FAULKNER; ROBYN FAULKNER; | : | |
| TOOGS & DEENIE, INC.; and | : | |
| SOUTH WESTERN BELL TELEPHONE CO. | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSLYVANIA | : | |
| | : | SS. |
| COUNTY OF MONTGOMERY | : | |

### AFFIDAVIT OF ROBERT WENTZ

I, Robert Wentz, an adult individual, being duly sworn, do hereby state as follows:

1.    I am an District Manager for Cottman Transmission Systems, LLC ("Cottman").  As part of my job responsibilities, I shop various Cottman Transmission Center by telephone to determine compliance with the Cottman system..

2.    The licensees for the Cottman Transmission Center located at 3611 E. Highway 377, Granbury, TX 76049 (the "Center") are David Faulkner, Robyn Faulkner, and Toogs & Deeenie, Inc.

3.    On June 11, 2002, I telephone the Center.  Rather than answering "Cottman Transmission" in accordance with the Cottman system, the Center answered the telephone "Transmission Center".  I asked if this was a "Cottman Center", and the reply was "Sort of. Yes".  I asked about Cottman warranties and David Faulkner came on the line.  I asked if Cottman warranties are available, and the reply was "No".

Robert Wentz

Sworn to and subscribed before me
this 11ᵗʰ day of June , 2002.

Notary Public

NOTARIAL SEAL
EILEEN J. BURKE, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires September 11, 2003

1

3

## IN THE COURT OF COMMON PLEAS
### MONTGOMERY COUNTY, PENNSYLVANIA
### CIVIL ACTION – LAW

| | |
|---|---|
| COTTMAN TRANSMISSSION SYSTEMS, LLC : | |
| and : | |
| COTTMAN TRANSMISSION : | |
| COMMUNICATIONS, CORP. : | |
| Plaintiffs, : | |
| v. : | No. |
| DAVID FAULKNER; : | |
| ROBYN FAULKNER; : | |
| TOOGS & DEENIE, INC.; and : | |
| SOUTH WESTERN BELL TELEPHONE CO. : | |
| Defendants. : | |


COMMONWEALTH OF PENNSLYVANIA       :
                                   :    SS.
COUNTY OF MONTGOMERY               :


### AFFIDAVIT OF CHRISTY WILSON

I, Christy Wilson, an adult individual, hereby depose and state as follows:

1.      I am the Yellow Page Coordinator of Cottman Transmission Communications Corp. ("Cottman Communications"), the designated advertising agent of Cottman Transmission Systems, LLC ("Cottman").  As part of my job responsibilities, I set up Yellow Page advertising and telephone accounts with various phone companies for individual Cottman Centers under my employer's name.  I also monitor accounts and trouble shoot billing problems. In addition, I place orders with the telephone companies to redirect or terminate Cottman telephone accounts as required.

2.      In accordance with long standing Cottman policy, when I set up a telephone account with a telephone company, I have the representative password the account and direct that only certain key employees of Cottman Communications and Cottman be given authority to

1

change the account only after giving the designated password when prompted by the telephone representative. This procedure is followed without exception.

3.      The telephone numbers for the Cottman Center at 3611 E. Highway 377, Granbury, TX 76049 (the "Center") are (817) 579-8664, (817) 573-0275, (817) 573-0414 and (817) 579-7033 (the "Telephone Account").

4.      The Telephone Account for the Center was set up by Cottman Communications and serviced by SWB.

5.      On or about October 10, 2001, Cottman Communications switched the service for the Telephone Account to a third party telephone company.

6.      On April 19, 2002, Cottman Communications contacted the third party telephone company to have the telephone number (817) 579-8664, which is advertised in our Yellow Pages advertisement, re-directed to another Cottman Center. Cottman Communications was informed that the Telephone Account was transferred to South Western Bell Telephone Company ("SWB") on November 15, 2001. This unauthorized transfer is known as slamming.

7.      On April 19, 2002, Cottman Communications contacted SWB to have SWB re-direct the telephone number. Cottman Communications was informed by the SWB representative that the telephone number could not be re-directed because Cottman Communications was not the name on the account.

8.      On April 22, 2002, Cottman Communications contacted SWB to have SWB re-direct calls to the advertised telephone number and sent SWB documentation demonstrating that Cottman Transmission Communication Corp. was the rightful accountholder, including a Telephone Use Agreement signed by Mr. & Mrs. Faulkner which expressly provides that the

2

Faulkners acknowledge Cottman's ownership of the telephone accounts and unfettered authority to re-direct the phone line as Cottman requires.

9.    Notwithstanding these attempts, SWB will not accept these documents as controlling, and has refused to follow Cottman's instructions.

Christy Wilson

Sworn to and subscribed before me

this _11th_ day of _June_, 2002.

Notary Public

```
NOTARIAL SEAL
EILEEN J. BURKE, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires September 11, 2003
```

3

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

CIVIL ACTION – LAW

COTTMAN TRANSMISSION
SYSTEMS, L.L.C., et al

VS.                                        No.   02-10798

DAVID FAULKNER

ORDER

AND NOW, this   27TH   day of       JUNE       , 2002, the Petition for Temporary Restraining Order and Preliminary Injunction conferenced on Tuesday, June 21st, 2002 is scheduled for a HEARING before the Honorable William Furber on Wednesday, July 3rd, 2002 at 10:00 a.m. in Courtroom F of the Montgomery County Court House, Norristown, Pennsylvania.

*Michael R Keho*
_____
Court Administrator

cc:   Alan L. Poliner, Esq.

**YOU ARE RESPONSIBLE TO
NOTIFY YOUR OPPONENT(S)
OF THE ABOVE DATE.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION SYSTEMS, LLC,
et al.,                                      :
                                             :
                    Plaintiffs,              :        CIVIL ACTION
                                             :
            v.                               :        NO.
                                             :
DAVID FAULKNER, et al.,                      :
                                             :
                    Defendants.              :

### CONSENT TO REMOVAL

The undersigned defendant, David Faulkner, without waiving and specifically

reserving all defenses, objections and motions, hereby consents to the removal of the above-

captioned action from the Court of Common Pleas of Montgomery County, Pennsylvania, to this

Honorable Court.


Dated:  June 2 8 2002                        _____

                                             David Faulkner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION SYSTEMS, LLC,    :
et al.,                               :
                                      :
                    Plaintiffs,       :        CIVIL ACTION
                                      :
          v.                          :        NO.
                                      :
DAVID FAULKNER, et al.,               :
                                      :
                    Defendants.       :

### CONSENT TO REMOVAL

The undersigned defendant, Robyn Faulkner, without waiving and specifically reserving all defenses, objections and motions, hereby consents to the removal of the above-captioned action from the Court of Common Pleas of Montgomery County, Pennsylvania, to this Honorable Court.

Dated: June 28, 2002                  _____
                                              Robyn Faulkner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COTTMAN TRANSMISSION SYSTEMS, LLC,          :
et al.,                                     :
                                            :
                        Plaintiffs,         :        CIVIL ACTION
                                            :
            v.                              :        NO.
                                            :
DAVID FAULKNER, et al.,                     :
                                            :
                        Defendants.         :

### CONSENT TO REMOVAL

The undersigned defendant, Toogs & Deenie, Inc., without waiving and specifically reserving all defenses, objections and motions, hereby consents to the removal of the above-captioned action from the Court of Common Pleas of Montgomery County, Pennsylvania, to this Honorable Court.

Toogs & Deenie, Inc.

Dated: June 28, 2002                        By: _____
                                                Robyn Faulkner, President